THE DOMINION MARBLE CO., LTD., A Corporation,
to the use of Gordon W. Scott, Liquidator,

*vs.*

WILLIAM H. MORROW and CHARLES A. MORROW,
Co-Partners, Trading as Morrow Bros.

*Arbitration and award*: *considered with favor by courts; impeachment for partiality or bias of arbitrator; evidence; mere suspicion not sufficient; no mere error of judgment; award need not be unanimous.*

As arbitrators are intended to compose disputes in a simple and inexpensive manner, whenever the parties to an arbitration agreement have had a full and fair hearing, the award of the arbitrators will be expounded favorably, and every reasonable intendment made in its support.                              p. 260

In such cases a court will not look to the merits of the matter and review the findings of law or fact made by the arbitrators, nor substitute its opinion for theirs, but will require the parties to submit to the judgment of the tribunal of their own selection and abide by the award.                              p. 260

This favorable consideration given by the courts to the findings of arbitrators assumes that the award is their honest decision, and involves no mistake so gross as to work manifest injustice or furnish evidence of misconduct on their part.  p. 260

Mere suspicion of misconduct will not authorize the setting aside of an award.                              p. 264

In this case it was held that the evidence was insufficient to sustain the exceptions, including the allegation that one of the arbitrators had failed to exercise judicial and impartial consideration of the issues.                              p. 263

An award can not be impeached for mere erroneous judgment on the facts.                              p. 262

Where a controversy is submitted by the parties to arbitrators, each one of the parties naming one, who in turn elect a third in case of disagreement, the failure of any one of the arbitrators to sign the award does not invalidate the same.

p. 259

*Decided January 31st, 1917.*

Appeal from the Superior Court of Baltimore City. (Ambler, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner, Stockbridge and Constable, JJ.

*George Whitelock* (with *Whitelock, Deming & Kemp* on the brief), for the appellant.

*Washington Bowie, Jr.,* submitted a brief for the appellees.

Burke, J., delivered the opinion of the Court.

Caldwell and Drake, a building firm, entered into a contract with the Youngstown Hotel Company to erect and complete an eight-story and basement hotel building in the City of Youngstown, Ohio. The contractors entered into an agreement with the Dominion Marble Company to furnish and complete the marble work for the hotel in accordance with the plans and specifications of the architects, Clinton and Russell, for the sum of twenty thousand dollars. The eleventh clause of this sub-contract is here transcribed: "In view of the fact that the Contractors are under obligation to perform their work with promptness and dispatch and to that end have organized and are maintaining a large staff of salaried employees, valuable machinery and equipment, at a large daily expense, and are devoting their own time, which is of great value, to the enterprise of which this contract forms a part, and delay in completing the work herein undertaken

will entail large financial loss, it is recognized and fully understood that delay on the part of the sub-contractor will be expensive and burdensome, and in order to protect the contractors from such known burden and expense it is agreed that if the work herein undertaken shall not be completed on or before December 1st, 1912, the sub-contractor will, as part compensation for such loss, pay to the contractors the sum of fifty dollars ($50.00) per day as liquidated damages only and not as a penalty, for each and every day thereafter that said work shall remain in an incompleted condition and such amount as shall accrue hereunder shall at once become due and payable.    It is further recognized that an early completion of the work of the contractors will save them valuable time, and the daily expense of the force organized to carry forward the common enterprise and the completion of the work undertaken by the sub-contractor herein will enure to his financial benefit in consequence; it is therefore agreed that the contractor will pay the sub-contractor, should he complete his part of the work before the first day of December, 1912, and the sub-contractor shall receive from the contractors the sum of fifty dollars ($50) per day for every day intervening between such date of actual completion of his part of the work, as certified to by the architects, and the date provided for completion as heretofore stated."    The general contractors, Caldwell and Drake, assigned all their interest in the contract to Morrow Brothers, the appellees, with the assent and approbation of the sub-contractors the Dominion Marble Company.

A suit was instituted on July 15th, 1915, in the Superior Court of Baltimore City, against Morrow Brothers to recover for the marble work done in the construction of the hotel under the sub-contract and for certain other charges.    The amount claimed to be due, as shown by the account filed with the declaration, was $15,638.28.    The general issue and special pleas were filed, and by appropriate pleadings the case was brought to issue.    An agreement was entered into to

submit the matters in dispute to arbitration. This agreement recited that: "The parties to the above suit being desirous to end the same by arbitration, do hereby agree and oblige themselves to submit the same, and all matters in controversy therein, to the award of Clyde N. Friz and Josias Pennington together with a third arbitrator, to be first selected by the two arbitrators herein named, who shall decide matters of difference only, and the award and decision of the said arbitrators, or a majority of them, shall be final and binding; and the parties further agree that this submission shall be made a rule of said Court agreeably to the provisions of Article 75* of the Annotated Code of Maryland relating to arbitration and award; so that the said award shall be made and set down in writing under the hands and seals of the said arbitrators or of any two of them, and shall be returned to the clerk of this Court on or before March 7th, 1916, to the end that the Court may give judgment on the award in accordance with the provisions of said article. Upon any question of law as to which the arbitrators may desire to be informed or advised, the said arbitrators are to be permitted to receive the instructions of the presiding judge of this Court. The arbitrators shall administer the usual oath to all witnesses and a stenographer shall take down the testimony." Provision was made for the conduct of the arbitration, the place of holding the sessions of the arbitrators and for the payment of the costs of the proceeding of the arbitration. On February 5th, 1916, the Court ordered "that the matters in controversy in the above entitled cause be and they are hereby referred under the rule of the Court and by agreement to Clyde N. Friz and Josias Pennington, as arbitrators, under the terms of the above agreement." The arbitrators, for the reasons presently to be stated, selected J. Henry Miller as third arbitrator to act in accordance with the terms of the agreement. On the 27th of March, 1916, Messrs. Pennington and Miller filed in Court the following award:

---

*Sections 46-51.

"In pursuance of the submission herein mentioned, we, the arbitrators, having taken upon ourselves the burden of said arbitration, and after due notice to the parties, having met on the eighth day of February, the second day of March, and other dates, and having heard and duly considered the allegations and proofs of the parties, submitted to us by them, respectively, do award that there is due from the defendants to the plaintiff the sum of one hundred and forty-eight and 12/100 dollars ($148.12).

"Witness our hands and seals the twenty-second day of March, 1916.

"Josias Pennington.    (Seal)

"J. Henry Miller.    (Seal)

"..............    (Seal)."

Mr. Friz disagreed with the finding of the other arbitrators and did not sign the award, but under the terms of the submission his signature was not essential to its validity. The plaintiff filed exceptions to the award and moved the Court to set it aside. Nine reasons were assigned for setting aside the award. The Court overruled the exceptions and entered judgment upon the award in favor of the plaintiff and from this action of the Court the plaintiff has brought this appeal. Some of the grounds of the exceptions have been abandoned, and the whole case of the appellant may be considered under the second ground of exception, viz: "Because the said Josias Pennington undertook to act for and represent the defendants, and altogether failed to exercise judicial and impartial consideration of the issues raised in this case." There is no dispute as to the law applicable to the case. It is said in 2 *Am. & Eng. Ency. of Law* 638: "If there be sufficient reason for imputing fraud, corruption or misconduct to the arbitrator, his award will be set aside. An arbitrator's first duty is to act uprightly and impartially between the parties. But mere suspicion of misconduct will not justify the Court in interfering to set aside the award. An arbitrator is the agent of both parties, and when there are more arbitrators

than one, each is the agent of both parties, and not the special advocate of the party appointing him. Where they act as the agent of one side only, it is corrupt misconduct on their part." And in *Roberts* v. *Consumers Can Co.,* 102 Md. 362, we said: "It has been settled by a long line of decisions that, as arbitrations are intended to compose disputes in a simple and inexpensive manner, whenever the parties to one have had a full and fair hearing the award of the arbitrators, will be expounded favorably and every reasonable intendment made in its support. *Lewis* v. *Burgess,* 5 Gill, 129; *Caton* v. *MacTavish,* 10 G. & J. 192; *Ebert* v. *Ebert,* 5 Md. 353; *Garitee* v. *Carter,* 16 Md. 312; *Bullock* v. *Bergman,* 46 Md. 278; *Witz* v. *Tregallas,* 82 Md. 369. In such cases it is conceded that the Court will not look into the merits of the matter and review the findings of law or fact made by the arbitrators nor substitute its opinion or judgment for theirs, but will require the parties to submit to the judgment of the tribunal of their own selection and abide by the award.

"The favor which the courts accord to awards of arbitrators is however predicated upon the assumption that in the conduct of the arbitration the parties to the controversy had a full and fair hearing, and that the award is the honest decision of the arbitrators and involves no mistake so gross as to work manifest injustice or furnish evidence of misconduct on their part. 3 *Cyc.* 743; *Roloson* v. *Carson,* 8 Md. 221-2; *Wilson* v. *Boor,* 40 Md. 483; *Burchell* v. *Marsh,* 17 How. 344."

The real question in the case is one of fact. Does the evidence show, as alleged by the appellant, that Mr. Pennington, was controlled or influenced in the discharge of his duties by bias, partisanship, or partiality in favor of Morrow Brothers, the appellees? The record shows that Mr. Friz was asked to serve as one of the arbitrators by Mr. Kemp, one of the counsel for the plaintiff, and that Mr. Pennington was asked to serve in that capacity by one of the defendants. Testifying as to his selection as arbitrator, and as to his conception of the manner in which his duties should be per-

formed, he said: "I was asked in January sometime by Mr.
Morrow if I would act for them as arbitrator in a dispute
arising from a construction of a hotel building—I was quite
busy—I hesitated sometime, and finally I said that, if I did
act, it would be in line of the contracts, papers and evi-
dence which was shown; and it would be decided absolutely
as I thought proper on lines of building practice as I under-
stood them." There is evidence in the record from which it
is argued that Mr. Friz was strongly biased in favor of the
appellant, but we are not required to pass upon that matter.
After the evidence had been taken before the arbitrators, they
disagreed as to the principles upon which the award should
be made and they asked for and received from the counsel
for the respective parties written instructions as to the law
of the case. They again disagreed as to the application of
the law. Colonel Wells, the architect in charge of the con-
struction of the hotel, had testified on behalf of the plaintiff,
before the arbitrators, and Mr. Pennington felt that he
needed some explanation of certain points in his evidence,
and he asked if it would be agreeable for him to see Colonel
Wells, or call upon him in New York, for further evidence,
or further explanation of what he had already testified to,
and he said that it was his understanding that it would be
agreeable for him to see Colonel Wells. The substance of
his interview with Colonel Wells is embodied in a letter ap-
pearing in the record and in Colonel Wells' reply thereto.
The arbitrators being unable to agree, called in as a third
arbitrator, Mr. J. Henry Miller. He and the other arbitra-
tors met in conference on March 20th, 1916. At this con-
ference all the matters in dispute were considered and dis-
cussed. No decision was reached at this meeting. It ap-
pears from the record that the main difference between
Messrs. Friz and Pennington arose over the question of for-
feits provided in the eleventh clause of the sub-contract. Mr.
Miller, referring to the meeting on March 20th, testified as
follows: "I heard Mr. Pennington, he went into the evidence,

that had been taken, thoroughly and the proof, and then Mr. Friz took it up and I followed each from the evidence; they were quoting and talking, and I followed them in the evidence that had been taken and which they were referring to; Mr. Friz had a large pile of letters there that he was referring to from time to time and he discussed the matter jointly and separately."

After the adjournment of this meeting Mr. Pennington wrote and sent to Mr. Miller the letter dated March 21, 1916, which appears in the record and a copy of which he sent to Mr. Friz. This letter it is claimed, demonstrates the partisanship of Mr. Pennington, and upon it the appellant mainly relies to set aside the award. There is nothing in the record to show the basis of the award. The award can not be impeached for erroneous judgment upon the facts, and no error of law appears upon the face of the award. *Cromwell* v. *Owings,* 6 H. & J. 12; *Ebert* v. *Ebert,* 5 Md. 353. The record, however, does show that the award was not based upon that letter. It was therein claimed that the appellant owed Morrow Brothers $6,304.13, but the award was in favor of the plaintiff. Unexplained, the letter might furnish some evidence of bias or partiality on the part of Mr. Pennington, but the explanation found in the evidence of Mr. Miller and Mr. Pennington satisfies us that Mr. Pennington was acting in perfect good faith in submitting to the consideration of Mr. Miller the claim for the items embraced in the letter. Mr. Pennington testified that the items had been written upon a pad, and that he thought they were proper to be considered before the umpire, Mr. Miller; that at the meeting on the 20th of March, 1916, "that statement was before us on my desk, and with a view of being perfectly courteous and fair, I hastily dictated it to our stenographer and, to have the matter before Mr. Friz, I sent him a copy of it; and that is the letter which has been the subject of so much talk. That letter was a memorandum to be used in discussing the various points arising with the umpire" * * * It was a memorandum that was sent to these two persons as

a matter of courtesy; otherwise, it would not have gone out of the office—otherwise it would have been treated as a memorandum in pencil. * * * We had a number of figures and memoranda before us, and before we adjourned it was my impression that Mr. Miller said he would like to have that memorandum and I told the stenographer to copy it in the form of a letter and send it to him; it was a memorandum purely and simply, a copy being sent to Mr. Friz; that was the ultimate amount of all the claims I saw could be considered; in taking up questions of this kind it occurred to me it would be a matter of compromise and I fully expected the umpire would disagree with the ultimate amounts claimed by Mr. Morrow; therefore, when he did decide that some of these amounts should be reduced, I was perfectly ready to concur in his decision; I think it would be well to say in reference to the evidence that after hearing all the evidence at the two meetings in my opinion it was not clear enough to enable me to form an opinion as to what would be right to the two parties; feeling that the evidence of the architects would have more weight with me than those I heard, I took the time and expense to visit New York and go fully over the entire case with Colonel Wells; the result of that conference is before you in writing; on that evidence and the strict wording of the contracts, I largely based my conclusion which was discussed before the other arbitrator and the umpire; there was but very little discussion on the figures." The integrity and honesty of Mr. Pennington is not questioned, and one of the counsel for the plaintiff during the hearing in the lower Court conceded "that Mr. Pennington did everything conscientiously."

After a careful consideration of the whole record our conclusion is that the testimony is insufficient to sustain any of the exceptions filed to the award.

The appellant reserved three exceptions to rulings on evidence. We do not find reversible error in any of the rulings. The first exception was taken to the refusal of the Court to admit, in evidence a letter from J. Hollis Wells, the archi-

tect, to the Dominion Marble Company dated July 31, 1912. It does not appear that the defendants, or Mr. Pennington saw or were aware of this letter, and, therefore, it could reflect no light upon the question before the Court. The second exception was taken to the refusal of the Court to admit on cross-examination of Mr. Pennington the stenographic report of the evidence of J. Hollis Wells taken before the arbitrators. For what purpose this offer was made does not appear from the record. It was not claimed that there was any inconsistency between his testimony and the statements contained in his letter to Mr. Pennington, and if some inconsistency did appear that would not be sufficient in view of the other evidence in the case to convict Mr. Pennington of partiality. The evidence of Leonard Weinberg, embraced in the third exception and which tended to show the partiality of Mr. Friz for the plaintiff, should not have been admitted. If Mr. Friz was actuated by bias or partiality in favor of the plaintiff that fact was known to and acquiesced in by it, and it is precluded from now taking advantage of it. *Balto. & Ohio R. R. Co.* v. *Canton Co.,* 70 Md. 405.

*Judgment affirmed, with costs.*