ALFRED J. O'FERRALL ET AL. *v.* DE LUXE
SIGN COMPANY ET AL.

[No. 9, January Term, 1930.]

*Decided March 11th, 1930.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Walter A. Buck* and *J. Morfit Mullen,* for the appellants.

*William D. Macmillan,* with whom were *Semmes, Bowen & Semmes* on the brief, for the appellees.

Urner, J., delivered the opinion of the Court.

In this action on the common counts, and on the alleged award of an arbitrator, the plaintiff seeks to recover the amount which he claims to have been owing to his assignor for financial and other services rendered in a sign business to which the corporate defendants succeeded, and the liabilities of which the corporation and its codefendant organizers are supposed to have assumed. The assignor, who, for convenience, will be called the plaintiff, was connected with the business from September 1st, 1926, to March 6th, 1928. For a time he received stated weekly compensation, but this was changed to a commission of ten per cent. on the funds provided by him for the financial needs of the business, which was conducted by a partnership composed of Wesley A. Grant and George J. Jolliffe, two of the defendants, trading as the De Luxe Sign Company. On March 6th, 1928, the plaintiff was notified that his services would no longer be required in the business, and that the amount due him on account of his advancements and commissions was to be ascertained as the basis of a settlement with him in view of his retirement and of the fact that a new financial interest was being enlisted in the enterprise. That interest consisted of financial and personal assistance provided by the defendant W. Brewer Joyce, who joined with Grant and Jolliffe in the incorpora-

tion of the business, on March 31st, 1928, under the same name which the pre-existing partnership had borne. In the interval between the 6th and 31st of March, an accountant employed by Mr. Joyce examined the books of the firm, for the period prior to March 6th, and presented the results of his investigation at a meeting, on March 31st, at which Mr. Lawrence, the plaintiff, Mr. O'Ferrall, his attorney, Mr. Grant, Mr. Jolliffe, and Mr. Stockbridge, attorney for Mr. Joyce, were present. The statement submitted by the accountant, relating to the period before March 6th, was supplemented by one which he and the plaintiff prepared, at the meeting, to cover the intervening time to March 31st. It is agreed that the account books of the firm were unsatisfactory, and the amounts reported at the meeting as being due the plaintiff were evidently regarded as tentative. The results of the conference were stated in a letter dated March 31st from Mr. Stockbridge to Mr. O'Ferrall, materially as follows:

"On behalf of certain clients, I am writing you as attorney for A. Gower Lawrence, to confirm the transaction made by us today.

"We have formed a corporation known as 'De Luxe Sign Company, Inc.,' and taken over the business heretofore conducted by Wesley A. Grant and George J. Jolliffe under the same name. Mr. Lawrence has assigned to this corporation all accounts receivable, and other claims he might have against the firm called 'De Luxe Sign Company.' He has also delivered to me for cancellation, notes of Grant and Jolliffe, which are all the notes obtained from them by him, aggregating approximately $1,700.00.

"The corporation will pay to Mr. Lawrence the amount due to him by the firm, which consists of $2,015.19, representing the amount due, exclusive of commissions, on March 6th, 1928; the sum of $1,500.00 in settlement of all claims for commissions and compensation of any kind; a sum believed to be $391.73, representing the cash adjustment arising from transactions of the firm from March 6, 1928, to March 30, 1928. These sums, other than the commission item,

are to be verified by the corporation between this date and April 10th, 1928.

"Of the amount so to be paid, $1,500.00 is paid to-day; balance to be paid by the corporation on or before April 10th, 1928.

"Mr. Lawrence is to sign and deliver to me the attached letter to the Baltimore Trust Company."

The attached letter to the Baltimore Trust Company, subsequently signed by the plaintiff, requested the trust company to give the bearer of the letter any desired information with respect to the plaintiff's checking and loan accounts as "agent", his banking transactions for the firm having been carried on under that designation. By an assignment, executed by the plaintiff individually, he transferred to the De Luxe Sign Company, Incorporated, all the accounts receivable of the firm which he held as collateral security for his advancements. In his capacity as "agent" he separately assigned to the corporation all accounts receivable at any time transferred to him by the firm, and all other claims which he might have against the De Luxe Sign Company, except in regard to his former interest in certain machinery.

The subsequent investigation of the plaintiff's accounts with the partnership led to the conclusion on his part that the amount due him was much more, and on the part of the defendants that it was considerably less, than the total of the figures stated in the letter of March 31st, from which we have quoted. There was apparently no effort on either side to complete the further examination of the accounts within the ten day period specified in the letter. On April 17th the plaintiff received a check from the corporation for $1,300. About a month later Mr. O'Ferrall sent to Mr. Stockbridge an itemized statement prepared by the plaintiff, showing a balance due him of $2,430.34 after all prior payments had been credited. This was followed, on May 24th, by a letter from Mr. O'Ferrall transmitting to Mr. Stockbridge a statement showing an additional indebtedness of $683.11, which the plaintiff claimed to be due. On July 6th Mr. Stock-

bridge sent to Mr. O'Ferrall for the plaintiff a check of the De Luxe Sign Company for $231.77, which its accountant reported to be the balance due the plaintiff on account of the settlement, the plaintiff being allowed to accept and use the check without prejudice. That payment was $875.15 less than the amount which would have been owing to him at that time if the figures tentatively stated in the letter of March 31st had been correct. A dispute between the parties as to the amount rightfully payable to the plaintiff was the occasion of further discussion and correspondence, which continued for two months, and culminated on September 10th in a written agreement between the plaintiff and Messrs. Grant and Jolliffe that Mr. Wilmer E. Black, a certified accountant, should "make an inspection of the accounts" between the plaintiff and the De Luxe Sign Company, and that "all the parties to the transaction shall be finally concluded by Mr. Black's determination." It was stipulated that Mr. Black should "examine the accounts to be furnished by the undersigned and any vouchers or evidence as to any disputed items, and also the books of the company, and any and all other books or sources of information that he may deem desirable." Mr. Black's son, Robert Black, also a certified accountant, was substituted for his father, as the arbitrator, by oral agreement of the parties on September 15th. The arbitrator proceeded with his investigation, and, on February 28th, 1929, submitted an oral report, which is the subject of controversy as to its purpose and effect. It is asserted by the plaintiff that the report was a decision in favor of the substantial correctness of his claim for a balance of $2,879.53, while the defendants contend that the arbitration was never completed and that it produced no final award.

The trial in the court below resulted in a verdict and judgment for the defendants, and the plaintiff has appealed. The main question presented by the exceptions in the record is whether the trial court properly ruled that the plaintiff's right of recovery was limited by the letter of March 31st, 1928, and could not in any event exceed the unpaid but disputed balance of the amounts therein stated. That restric-

tion was imposed by the granting of the defendants' ninth prayer and by an explanatory statement of the court in the presence of the jury. The prayer instructed the jury that if they should find that on March 31st, "1929", (1928), the defendants agreed with the plaintiff to pay him certain sums of money mentioned in the letter of that date, and should "further find that the amounts referred to in said letter were to be verified by the defendant corporation and an adjustment thereon but in no event to exceed the amounts above referred to", and should "further find that the defendants have paid to the plaintiff the said sums of money less an adjustment in the amount of $875.12, which the defendants claim the plaintiff is not entitled to receive", and if the jury should find "that the plaintiff is not entitled to receive from the defendants the aforesaid sum of $875.12", and if they should further find "that the defendants never agreed to pay the plaintiff the sum of money now claimed to be due him or any part thereof," then the verdict of the jury should be for the defendants.

When asked by counsel for the plaintiff as to the effect of the instruction in limiting the plaintiff's recovery to $875.12, the court said: "If that is what it says, that is what I want to be understood as intending to say, that I think the limit on the recovery of the plaintiff is set forth in that letter of March 31st. That he cannot go beyond the amount that was in there. That anything that has happened on credits or payments since that time, that modifies that amount, of course, is what the jury has got to determine * * *. As I remember it, * * * that agreement said the amount due was $2,015.19 plus $391.73. I understand that the $1,500 is really out of the whole case. Now the question is $2,015.19 plus $391.73, less any payments that have been made on account, or any credits that should have been allowed that were not allowed from an investigation of the account since that date."

The defendants' ninth prayer, by its own terms, would have permitted the jury to construe the agreement embodied in the letter of March 31st, 1928, and to determine whether

it intended that the plaintiff's claim should in no event exceed the amounts mentioned in the letter, but the oral explanation by the court, which is the subject of a separate exception, definitely interpreted the letter as imposing such a limitation. In our opinion, that construction of the agreement should not be judicially declared, when it is considered in the light of the circumstances and purposes of its execution, and of the attitude and conduct of the parties in regard to its application.

There is evidence in the record tending to prove that the amount of the actual indebtedness of the defendant partnership to the plaintiff was greatly in excess of the sums specified in the agreement, and that some time before it was prepared he mentioned a much larger amount as being due him, according to his belief, in a conversation with the accountant employed by Mr. Joyce to examine the books of the firm and discover the extent of that liability. It has already been noted that the books were not in a satisfactory condition, and, while honestly kept, they did not readily admit of a complete and correct ascertainment of the debit and credit items which should properly enter into the accounting. In the course of the correspondence on the subject, during the period subsequent to the agreement, the figures stated in it were described by the defendants' counsel as being "tentative." The collateral surrendered by the plaintiff on the date of the agreement was more than sufficient to secure the full amount of the indebtedness which he claims to have been due him at that time. The ensuing negotiations and submission of the accounting to arbitration can hardly be reconciled with the theory that the verification contemplated by the agreement might conclusively result in an unlimited downward revision of the figures it indicated, but could not result in the slightest increase even though they were found to be in fact grossly inadequate. While it was important for the incoming participant and investor in the business to learn the amount of the firm's liability to the plaintiff, it is not suggested that the latter had any reason or design to relinquish any part of the sum justly due him for services actu-

ally rendered. If the further inquiry for which the agreement provided, to verify the stated sums, other than the commission item, had convinced the defendants that the tentative figures were substantially less than the true amount of the indebtedness to the plaintiff, the new interest might have been entitled to withdraw from the reorganization of the business. But neither from the language of the agreement, nor from the situation and conduct of the parties, can it be reasonably inferred that the plaintiff was intended to be subjected to the necessity of accepting, without the right to dispute, any amount which the debtors by their *ex parte* investigation might determine to be due, though far below the total of the figures to be "verified."

The verdict of the jury was based upon an acceptance of the defendants' theory that the indebtedness of the plaintiff at the time of the agreement was $875.15 less than the aggregate of the sums therein tentatively adopted, and that the balance of that total had been satisfied by the two payments of $1,300 on April 17th and $231.77 on July 6th, to which we have referred. In reaching that conclusion the jury may have been influenced by a belief, predicated on the court's approval of the defendants', and its rejection of the plaintiff's, interpretation of the agreement, that the result of the defendants' further examination of the accounts was to be conclusive. At all events we are not at liberty to construe the verdict as meaning that upon no theory as to the effect of the agreement was the plaintiff, in the judgment of the jury, entitled to receive any part of the claim in litigation.

Two granted prayers of the defendants, the eleventh and twelfth, instructed the jury in regard to the arbitration of the dispute between the parties as follows:

Eleventh. "The defendants pray the court to instruct the jury that if they find from the evidence in this case that Robert Black never fully completed his examination of the accounts referred to in the evidence, and further that the said Robert Black never definitely determined what amount he found to be due the plaintiff, if any, and if the jury shall further find that the defendants have fully paid the

plaintiff all sums of money which they promised to pay the plaintiff under the terms of the letter of March 31st, 1929, that then the verdict of the jury must be for the defendants."

Twelfth. "The court instructs the jury that even though they should believe that Robert Black at the meeting at the office of J. Morfit Mullen, Esq., on February 28th, 1929, referred to in the evidence, stated that he found the plaintiff's claims to be substantially correct, yet if the jury shall further find from the evidence in this case that when the said Robert Black made such statement, if the jury finds he did, he had not at that time actually made a complete and final examination of all of the accounts, books, papers, and any other sources of information relevant to the transaction between the parties then if the jury so find such statement by Robert Black is not binding upon the defendants in this case."

Three prayers of the plaintiff relating to the arbitration were refused, and the effect of those granted at the request of the defendants, submitting the question as to the alleged award of the arbitrator, was neutralized by the instruction first considered, which made the verdict depend upon the terms of the agreement of March 31st, construed as limiting the right of recovery.

Arbitration is a method favored by law for the settlement of disputes. *Roberts v. Consumers Can Co.,* 102 Md. 362; *Dominion Marble Co. v. Morrow,* 130 Md. 255; *McDonald v. Real Estate Board,* 155 Md. 377. The written agreement for arbitration proved in this case was valid and effective. It obligated the parties to the acceptance of the arbitrator's award as conclusive upon the question submitted for his decision. There was no provision in the agreement that his award should be made in writing, and there was no necessity for an award in that form, as the title to land was not involved, and if the arbitrator in fact made an award orally, and it was complete and final, after a full and fair investigation, it is a proper ground of recovery in this action. 5 *C. J.* 114; 2 *R. C. L.* 382.

There is testimony in the record tending to prove the essential elements of a binding award, and there is also evi-

dence to the contrary. After the arbitration had been pending for several months, and the arbitrator had reported to the attorneys for the opposing parties, according to testimony for the plaintiff, that the latter's claim for $2,800.83 was correct, it appears that the agreement of March 31st, which had been disregarded in the arbitration compact, was presented to the arbitrator on behalf of the defendants, with the proposal that his decision should take its provisions into consideration. For the reason that he would thus be required to determine a question of law as to the proper construction of that agreement, for which task he did not feel qualified, and because the plaintiff's counsel protested against the proposed use of the agreement for that purpose, the arbitrator did not reduce his oral report to writing, as requested by counsel for the parties, and the question as to the finality of his action remains a subject of contention.

The plaintiff was entitled to instructions, as he requested, that if he and the defendants entered into the arbitration agreement mentioned in the evidence, and that the arbitrator made an examination of the accounts between the plaintiff and the De Luxe Sign Company, and thereafter, in the presence of defendants' attorney, made an oral award that there was due to the plaintiff, under the accounting, a certain sum of money, then the verdict should be in favor of the plaintiff for the sums so awarded; and if the jury should find that the parties contemplated that the award reported orally should be in writing, the failure of the arbitrator to make a written award should not prevent a recovery by the plaintiff of the sum orally awarded, provided the jury should further find that the arbitrator completed his work, in accordance with his instructions, and so advised the parties, and orally stated the amount of his award, but did not make the award in writing because of the presentation to the arbitrator of the letter of March 31st without the plaintiff's consent; and that the arbitrator had no authority to consider that letter in the performance of his duties under the arbitration agreement of September 10th, and that the jury should not be

affected by the terms of the letter in deciding as to their verdict. While we approve of the general theory of these prayers thus summarized in combination, one of them was properly refused in the form in which it was offered, because it concluded the hypothesis of surreptitious action on the part of the defendants' attorney in exhibiting the letter of March 31st to the arbitrator, and the evidence does not justify that imputation.

In ruling on the prayers, certain references to the testimony were made by the court in the presence of the jury. To some of the remarks thus made the plaintiff excepted. The jury were cautioned by the court that those statements were intended for the benefit of counsel and should have no influence upon the verdict. There was no request from any of the parties that the jury be excused while the court was discussing the prayers. This might have been a proper precaution in view of the nature and scope of the court's comments. But apart from their explanatory effect, already considered, upon the granted prayers, we find no sufficient ground to hold the exceptions sustainable.

There are two exceptions in the record referring to the admission of testimony which, in our opinion, should have been excluded; because it merely indicated the opinions of the witnesses as to the effect of the written agreements of March 31st and September 10th, 1928.

> *Judgment reversed with costs, and case remanded for a new trial.*