NELLEY ET AL., ETC. *v.* MAYOR AND CITY
COUNCIL OF BALTIMORE

[No. 57, September Term, 1960.]

2

*Decided December 15, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Marvin Ellin* for the appellants.

*Edward W. Kreutzer* and *Jacques E. Leeds, Assistant City Solicitors of Baltimore,* with whom was *Harrison L. Winter, City Solicitor,* on the brief, for the appellee.

**4**

BRUNE, C. J., delivered the opinion of the Court.

Eugene J. Nelley and James O. Sanders, partners trading as Patapsco Crane & Pile Co., (Patapsco) brought this suit at law against the Mayor and City Council of Baltimore (the City) for damages to compensate them for additional costs incurred by Patapsco in the performance of a contract for the construction of a new sewer line, which costs were due to the concealment of a material fact by the City. The verdict of the jury was in favor of Patapsco. On motion of the City, judgment *n. o. v.* was entered in its favor on the grounds that the Patapsco's claim was within the scope of the arbitration clause of the contract, that it had been submitted to the arbitrator specified in the contract and that it had been determined by him adversely to Patapsco prior to the institution of this suit. Patapsco appeals from the judgment.

At issue on this appeal is the correctness of the above holdings of the trial judge. The City filed a motion to dismiss the appeal on the ground that Patapsco had failed to comply with the requirements of Rule 828 (b) as to what shall be included in the appendix or printed record extract. This motion was argued immediately prior to the hearing on the merits and decision thereon was reserved. We think that the appellants' appendix does contain enough of the evidence, pleadings and other parts of the record to enable us to determine the sufficiency thereof to support the judgment of the trial court, and we therefore deny the motion to dismiss.[1] See *Brown v. Fraley,* 222 Md. 480, 482-83, 161 A. 2d 128; *Reddick v. State,* 219 Md. 95, 97, 148 A. 2d 384, cert. den. 360 U. S. 930; cf. *Columbian Carbon Co. v. Kight,* 207 Md. 203, 205, 114 A. 2d 28 (which arose under a former rule).

---

1. The appellee, we may note, has sought to rely upon factual contentions in support of which it has made several references to the transcript, but it has neither printed such material in its own appendix (see Rule 828 e) nor would it advance or underwrite the cost of including in the appellants' appendix portions of the record which it had sought to have included (see Rule 828 d). We have not passed upon contentions based upon such omitted material.

The facts in this case are simple and essentially undisputed. Bids were requested by the City for the construction of a sewer line and for the work incidental thereto. In response to this invitation, and after visiting the site of the proposed construction and receiving from the City the specifications and a drawing of the work to be done, Patapsco submitted a bid. Prior to the submission of this bid Mr. Nelley, a partner in Patapsco, called the Bureau of Sewers and asked if there was any other information Patapsco would need to formulate its bid—he was told that Patapsco had all the information requisite to making its bid. Neither Patapsco nor any other bidder was supplied at that time with a drawing of an old sewer line, showing the cracks therein, though the old line was within ten feet of the proposed new line and the City had the drawing in its files prior to its request for bids. On September 29, 1959, Patapsco being the lowest responsible bidder, was awarded the contract, known as Sanitary Contract No. 468.

Soon after Patapsco began excavating a trench for the new line, it was confronted with the seepage of raw sewage from the old line into its excavation. Upon being faced with this problem Mr. Nelley contacted Mr. Arthur P. Shanklin, Field Engineer for the Bureau of Sewers. Mr. Shanklin, in an attempt to be of assistance to appellants, supplied them with the above mentioned drawing of the old sewer line. Though believing that the City had wrongfully concealed this drawing from it, Patapsco elected to "complete the contract and obtain damages for the misrepresented portion of the project later." After completing the contract Patapsco engaged Mr. Owen W. Turpin, a consulting engineer, who arranged a meeting on Patapsco's behalf, with Mr. John J. Hunt, the City's Sewerage Engineer. At this meeting Patapsco sought compensation for the expenses it had incurred in coping with the seepage of sewage from the old sewer line. In order to press its claims, which involved this matter and several others, the appellants and their then counsel attended a meeting with Mr. George A. Carter, then the Director of the City's Department of Public Works and, as such, the referee named under the arbitration clause of Sanitary Contract No. 468 (the Arbitration Clause). This meeting was evidently in the nature of

a hearing, for Mr. Carter testified that he had then heard the same evidence that he had heard in court.

The Arbitration Clause reads as follows:

"Authority of Sewerage Engineer and Director of Public Works.

58. Subject to the power and authority of the Director of Public Works as provided by law and in these contract documents, the Sewerage Engineer shall in all cases, determine the amount or quantity, quality and acceptability of the work and materials which are to be paid for under this contract; shall decide all questions in relation to said work and the performance thereof; and shall, in all cases, decide questions which may arise relative to the fulfillment of the contract or to the obligations of the Contractor thereunder.

To prevent disputes and litigations, the Director of Public Works will be the referee in case any question shall arise between the Contractor and the City touching the Contract, and his determination, decision and/or estimate shall be final and conclusive upon the Contractor and shall also be a condition precedent to the right of the Contractor to receive any moneys under the contract."

Two days after the meeting with Mr. Carter, the appellants were informed by him by letter (copies of which are stated to have been furnished to their then counsel and to the Sewerage Engineer) that "[a]cting in pursuance * * * [of his] power and authority as referee under the contract," their "claim for * * * pumping and time lost [was] denied," and they were also advised of his action as referee upon their other five claims, three of which appear to have been allowed in part and one in whole. Patapsco then brought this suit in the Superior Court of Baltimore City, with the result above stated.

In essence Patapsco contends that the trial judge erred in holding that the Arbitration Clause was broad enough to bar suit for the damages caused by the City's concealment or mis-

representation in the inducement of the substantive portions of the contract. In urging this contention, it asserts that the case of *Soviero Bros. Contracting Corp. v. City of New York,* 142 N.Y.S. 2d 508, 510, cited and relied upon by the trial court as authority for restricting them to their rights under the Arbitration Clause, does not support the trial court's holding.

It is clear, assuming the correctness of Patapsco's claim that it was a defrauded party, that Patapsco, upon discovering the fraud perpetrated upon it by the City, had an election of remedies which are mutually exclusive. It could, by appropriate action, promptly rescind the contract and be restored to its former position (which here would have included obtaining reimbursement for work done prior to discovery of the fraud and rescission), or it could affirm by performing the contract and claim damages due to the concealment or misrepresentation. The latter remedy was the one actually and clearly chosen, and it is, of course, an affirmance of the contract. *Wolin v. Zenith Homes, Inc.,* 219 Md. 242, 250-51, 146 A. 2d 197; *Sommers v. Dukes,* 208 Md. 386, 393, 118 A. 2d 660; *Ortel v. Upper Ashburton Realty Co.,* 171 Md. 678, 686, 190 A. 239; *Telma v. Gingell,* 157 Md. 411, 413, 146 A. 221; *Groff v. Hansel,* 33 Md. 161, 166. See also 5 Williston, *Contracts* § 1528 (Rev. ed., 1937); II *Restatement of Contracts* § 484.

That this election constituted affirmance of the contract in its entirety is supported by the *Soviero* case. In that case a contractor after discovering that the City of New York had withheld material facts concerning a construction project elected to perform his part of the contract and to sue the City for the damages caused him by the deceit. The contract had a clause which barred any suit concerning the contract brought more than one year after the final certificate had been filed. The City raised this clause as a defense to the contractor's suit. Justice Breitel, speaking for the majority of the court, stated: "* * * the gravamen is misrepresentation, innocently or recklessly made by the City, with respect to material facts, at a time when, somewhere in the files of the City, there were documents and maps clearly revealing the true facts, which were never

disclosed in advance to the contractor. Since, however, the action is based on damages at law for fraudulent inducement, it is in affirmance of the contracts. This being so, the City may avail itself of the short period of limitations contained in the written agreements with the contractor." There the ratification of the contract included ratification of the short period of limitations clause; here it includes the Arbitration Clause.

In the instant case the very issue now in litigation was submitted to the referee or arbitrator specified in the contract. He held a hearing and made an award thereon, which was adverse to Patapsco on this issue. There is no suggestion that the hearing was not fair or that the referee acted otherwise than fairly and conscientiously, except that Patapsco claims, in effect, that he could not act in such a manner because he was an official of the City. This argument comes down to a contention that he was disqualified because of interest. There is nothing before us to show any unfairness in fact on his part, notwithstanding that the jury later reached an opposite conclusion on the issue of concealment. (We may add that we find nothing in the evidence printed by the appellants, and we assume that there is none, to suggest that the concealment was due to any actual intention on the part of any city official or employee to deceive or defraud the appellants or any other bidders.)

There may be some distinctions between executory and executed agreements to arbitrate and the scope thereof as to their enforceability and effect. For a recent case involving an executory agreement, see *Eisel v. Howell,* 220 Md. 584, 155 A. 2d 509. Here, however, we are dealing with an executed agreement to arbitrate—the dispute had been submitted and the arbitrator's decision had been made. As to such an award Professor Corbin states (6 Corbin, *Contracts* § 1439): "An award of arbitrators, once it is rendered, is valid and enforceable in the courts, if there has been a fair hearing and the arbitration was held and the award rendered in accordance with the submission agreement. * * * These statements are true without regard to whether the agreement of submission is expressly applicable to all future disputes or is limited to specified issues." To like effect, see also 6 Williston, *Con-*

*tracts* (Rev. ed. 1938), § 1927, where that learned author says: "If a claim is submitted to arbitration and an award is duly made by the arbitrators, its terms are conclusive on the parties." The law of Maryland is in accord. *Dominion Marble Co. v. Morrow,* 130 Md. 255, 260, 100 A. 292; *O'Ferrall v. De Luxe Sign Co.,* 158 Md. 544, 552-554, 149 A. 290, and cases therein cited. See also *Continental Milling & Feed Co. v. Doughnut Corporation of America,* 186 Md. 669, 674, 48 A. 2d 447; *Waller v. Waller,* 187 Md. 185, 193, 49 A. 2d 449; *Parr Construction Co. v. Pomer,* 217 Md. 539, 543-544, 144 A. 2d 69. See also the cases cited below relating to the validity of the designation of a representative of one of the parties as the arbitrator.

Two questions then remain to be considered: first, can the arbitrator or referee who is to make the final and binding decision under the provision be an official of one of the parties to the contract; and, second, can a claim of concealment or misrepresentation in the inducement of the substantive contract be considered under the arbitration provision here involved? The latter question can be divided into two parts: (a) is the Arbitration Clause broad enough to cover it; and (b) if so, is its inclusion invalid as against public policy?

As to the first question it is established that the parties to a contract may provide for the submission of disputes with respect to the contract to an arbitrator who is an official or representative of one of the parties, and that in the absence of a showing of fraud or bad faith on his part, his determination will be binding. *Lynn v. Baltimore & Ohio R. R. Co.,* 60 Md. 404, 413-415; *Mayor & C. C. of Baltimore v. Talbott,* 120 Md. 354, 87 A. 941; *Mayor & C. C. of Baltimore v. Ault,* 126 Md. 402, 94 A. 1044; *Mayor & C. C. of Baltimore v. Clark,* 128 Md. 291, 97 A. 911; *Schiavi v. Mayor & C. C. of Baltimore,* 40 F. Supp. 184, 190 (D. C., Md., Chesnut, J.); *Kihlberg v. United States,* 97 U. S. 398, 401; *United States v. Gleason,* 175 U. S. 588, 602; *Plumley v. United States,* 226 U. S. 545, 547; *Merrill-Ruckgaber Co. v. United States,* 241 U. S. 387, 393. As already stated, there is no showing whatever of fraud or bad faith in the making of the award by the former Director of Public Works of the City.

As to the first branch of the second question, the answer is found in the language of the particular arbitration clause in issue. This clause provides that, "the Director of Public Works will be the referee in case any question shall arise between the Contractor [Patapsco] and the City *touching the Contract,* and his determination, decision and/or estimate shall be final and conclusive upon the contractor * * *." (Italics supplied.) A dispute as to whether or not there was a concealment of a material fact in the advertising and awarding of the contract seems to us clearly to be a dispute "touching the Contract." This apparently was also the practical construction of the contract by both parties when this very issue was submitted to the Director of Public Works for his decision.

The appellants contend, however, under the second branch of the second question, that this clause cannot require arbitration of disputes involving claims of misrepresentation in the inducement of the substantive contract. We do not agree with this contention. Such a question does not appear to have been decided previously in this State, but it has been decided in New York, which has a comprehensive arbitration statute. In the *Matter of Amerotron Corp.,* 3 App. Div. 2d 899, 162 N. Y. S. 2d 214, 215 (1st Dep't) memorandum opinion aff'd without opinion, 4 N. Y. 2d 722, 148 N. E. 2d 319, the party accused of fraud, Amerotron, was held entitled to the enforcement of an arbitration award made pursuant to an arbitration clause which was the same in each of five contracts between Amerotron and Maxwell Shapiro Woolen Co., Inc. (Shapiro), where Shapiro had elected to affirm and not to rescind the contracts. This clause provided for the arbitration in New York City of "[a]ny controversy or claim arising under or in relation to this order or contract" in accordance with the laws of the State of New York, under the rules of any one of three arbitration or trade organizations. Shapiro had sued Amerotron in the Superior Court of Massachusetts both in contract for breach of warranty and in tort for fraud alleged to consist of false representations, which induced Shapiro to enter into the contracts.[1] The Massa-

---

1. Some of the facts here stated are derived from the opinion of

chusetts Superior Court, on motion of Amerotron, stayed Shapiro's suit pending arbitration in New York. The arbitration proceedings went forward, though Shapiro did not participate therein (by what the New York Appellate Division characterized as its "deliberate default") and resulted in an award in favor of Amerotron. In upholding this award, the Appellate Division said in part: "By all of its actions, respecting its claim of fraud inducing the contract, including its complaint in the Massachusetts action, respondent [Shapiro] failed to rescind the contract and elected to recognize the contract and claim damages for the fraud. Such a claim was arbitrable and should have been arbitrated under the contract."

It would appear from the New York *Amerotron* case and from the decision in the *Matter of Wrap-Vertiser Corp. and Plotnick*, 3 N. Y. 2d 17, 19, 143 N. E. 2d 366, 367, that the New York courts will allow claims of fraud to be arbitrated at least where the defrauded party affirms the contract and the arbitration agreement is broad enough to include the issue of fraud. In *Wrap-Vertiser Corp.*, a 4-3 decision, the majority held the claim not within the terms of the arbitration clause; the minority thought that it was.

*Maxwell Shapiro Woolen Co., Inc. v. Amerotron Corp.*, 158 N. E. 2d 875 (Mass.) deals with the Massachusetts proceedings in the case which had been stayed pending New York arbitration of the controversy between the parties. Following the conclusion of the New York arbitration and proceedings for its enforcement (including the entry by the Supreme Court of New York of judgment on the award pursuant to the decisions of the Appellate Division and of the Court of Appeals above cited, and a refusal by the Supreme Court to vacate and reopen the award), Amerotron moved for judgment on the pleadings in Massachusetts and the motion was granted. The pleadings brought to the attention of the Massachusetts court the New York arbitration award and proceedings for its enforcement. The Supreme Judicial Court over-

the Supreme Judicial Court of Massachusetts in *Maxwell Shapiro Woolen Co., Inc. v. Amerotron Corp.*, 158 N. E. 2d 875, and are not shown by the reports of the *Amerotron* case above cited in either the New York Appellate Division or Court of Appeals.

ruled exceptions to the granting of the motion for judgment in favor of Amerotron. In an opinion by Justice Cutter it held, *inter alia,* that the New York proceedings concluded every issue presented in the Massachusetts case and every "issue that in fact was or in law might have been litigated" under the demand for arbitration. Because of a consent to the jurisdiction of the Supreme Court of New York embodied in the arbitration clause, the Massachusetts Supreme Judicial Court found it unnecessary to determine whether Shapiro had, in effect, entered a general appearance by its various activities before the New York courts.

In the above case Justice Cutter also distinguished the New York *Amerotron* case from *Wrap-Vertiser* on the basis of the scope of the arbitration clauses. We think that the arbitration clause before us is broader than that in *Wrap-Vertiser* and is equivalent to that in *Amerotron.* It provides (as already stated) that the referee shall determine all issues which "shall arise between the Contractor and the City touching the Contract."

In *Robert Lawrence Co., Inc. v. Devonshire Fabrics, Inc.,* 271 F. 2d 402 (decided in October, 1959) the United States Court of Appeals for the Second Circuit seems to have taken a different view of the law of New York from that which we think the Supreme Judicial Court of Massachusetts took in the Shapiro case and from that which we have expressed. Because of our high regard for the Court which decided the *Lawrence* case and because of the fact that it deals constantly in diversity cases with the determination of the law of New York, we feel great hesitancy in differing from its view as to the law of that State. Yet we note that Judge Medina cited *Wrap-Vertiser* as determinative of the law of New York as to whether or not fraud in the inception of the contract was a matter subject to arbitration and did not cite *Amerotron,* which had been decided by the New York Court of Appeals in January, 1958. After commenting upon *Wrap-Vertiser,* Judge Medina recognized (271 F. 2d at 412) that "[p]erhaps the Court of Appeals would have arrived at a different result had it been construing the somewhat broader language of the arbitration clause now before us." We think that this is ex-

actly what the Court of Appeals did in *Amerotron*, at least where the party claiming fraud had ratified the contract.

The arbitration clause in the *Lawrence* case provided in part that "[a]ny complaint, controversy or question which may arise with respect to this contract that cannot be settled by the parties thereto, shall be referred to arbitration." It further provided that a controversy concerning the quality or condition of merchandise should be referred for arbitration to a certain trade organization and that "[a]ll other controversies shall be submitted to the American Arbitration Association." The scope of this clause seems to us similar to that in *Amerotron* and in the instant case.

In *Lawrence*, the Second Circuit held that since the contract was for an interstate sale of goods, the arbitration clause therein contained was governed by Sec. 2 of the Federal Arbitration Act (U. S. C. A., Title 9, § 2) as a matter of substantive law, and not by the law of New York. It also held that the arbitration clause should be treated as separable from the rest of the contract (a point which it is noted was not discussed in *Wrap-Vertiser*), and that since there was no claim that the arbitration clause itself had been induced by fraud, there was no need for any preliminary judicial determination of such a question. The Court further held that this separable arbitration clause was valid and enforceable under Section 2 of the Federal Arbitration Act, notwithstanding disaffirmance of the contract of sale by the allegedly defrauded party (assuming that there had been such disaffirmance), and that the arbitration clause was broad enough in scope to cover the question of fraud in the inducement of the contract of sale, and that it was applicable thereto. (As to this last proposition the Second Circuit, as above stated, found the New York law to be different.) The Court further held that the party charged with fraud was entitled under Sec. 3 of the Federal Arbitration Act to have the action stayed pending arbitration of the question of fraud. A writ of certiorari was granted by the Supreme Court of the United States, 362 U. S. 909, but was thereafter dismissed pursuant to stipulation of counsel under Rule 60 of that Court, 364 U. S. 801.

As it stands, the *Lawrence* case as well as the *Amerotron*

14

case, supports the arbitrability of a question of fraud, if the terms of the arbitration clause are sufficiently broad to include it. Indeed, on its facts, *Lawrence* goes beyond *Amerotron,* for it reaches this conclusion notwithstanding disaffirmance of the contract by the party claiming to have been defrauded. That, we repeat, is not the situation before us. Patapsco clearly elected to affirm the contract and to seek damages for alleged concealment or misrepresentation in its inducement, and we think it clear that it first sought to do so through the very arbitration procedure set up by the contract. It thus ratified both the substantive contract and the arbitration procedure which it embodied. It did so with full knowledge both of the nature of its claim and of the official position of the designated referee or arbitrator.

In summary, we hold that the Arbitration Clause was broad enough to include disputes involving claims of concealment or misrepresentation in the inducement of the substantive contract; that the referee designated as such in the contract was qualified to act as such; that the appellants ratified the contract and its arbitration provisions; and that the denial by the designated referee of the appellants' claim, after a fair hearing and in the absence of any evidence whatever to show fraud or bad faith on his part in making his decision, constitutes a binding arbitral award. The judgment will accordingly be affirmed.

*Judgment affirmed, with costs.*