**WILSON CONTRACTING CO., Inc., a corporation of the State of Delaware, Plaintiff Below, Appellant,**

v.

**The STATE of Delaware, Acting Through, By and Under N. Maxson TERRY, Lemuel H. Hickman, Thurman Adams, Jr., Harry Bonk, Anthony B. Carroll, Jr., C. Wardon Gass, William J. Hopkins, Aubrey B. Lank, Frank H. Mackie, Jr., Albert S. Moor, Elmer Pratt, Constituting the State Highway Department of the State of Delaware, Defendants Below, Appellee.**

Supreme Court of Delaware.

Nov. 15, 1966.

C. Edward Duffy and Murray M. Schwartz, of Longobardi & Schwartz, Wilmington, for appellant.

S. Samuel Arsht and David A. Drexler, of Morris, Nichols, Arsht & Tunnell, Wilmington, for appellee.

WOLCOTT, C. J., and CAREY, J., and MARVEL, Vice-Chancellor, sitting.

CAREY, Justice.

The appellant, Wilson Contracting Co., Inc. (Wilson) is a road contractor. In August 1958, it entered into contracts with the State Highway Commission (Department) for the construction of three sections of road in Kent and New Castle Counties. After the completion thereof, it brought this action in Superior Court to recover for loss allegedly caused by Department's delays in

certain respects.[1] Three questions are presented in the briefs. They are: (1) was the claim subject to determination by Department's Chief Engineer as "referee" under the Clause 27 of the Standard Specifications; (2) if Clause 27 is applicable, did the Court below err in refusing to decide appellant's charge of constructive fraud in the Chief Engineer's determination; (3) does Clause 62 of the Standard Specifications limit appellant's rights, in case of delay caused by Department, to an extension of time for completion of the work and suspension of liquidated damages for the period of delay.

In making its bids, Wilson relied upon representations of the Department that all rights-of-way had been acquired or would be acquired in such time as not to interfere with orderly prosecution of the work. After contracts had been signed and bonds posted, Wilson was told that certain rights-of-way had not been actually acquired but were expected to be obtained in ample time for Wilson to proceed without interruption. In fact, as matters turned out, there were delays in acquiring certain rights-of-way and rights-of-entry, and in relocating certain utility lines. Further delays were caused by Department's refusal to permit Wilson to enter upon rights-of-way which had been acquired, by the alterations of plans and specifications and by failure of the plans to show the need for certain "undercutting". The consequence was, charges Wilson, that it suffered severe losses by being forced to keep its equipment idle, to move its heavy equipment from place to place, to move fill unusual distances and at times to use hand labor for work ordinarily done with machines, all of which could have been avoided had it not been for Department's defaults. Wilson was allowed extra time to complete the work, without payment of liquidated damages for the time allowed.

Following completion, Wilson wrote letters to the Department's Division Engineers for the two counties involved presenting the claims here made. The matter was taken up with the Highway Commission which referred it to the Chief Engineer for study and recommendation. He caused an investigation to be made by his staff and by auditors who examined Wilson's books. After studying their reports, he recommended to the Commission that the claims be disallowed. Conferences took place between Wilson's representatives and Department's Committee on Contract Administration. The Chief Engineer was present at all these conferences. Finally, on February 11th, 1963, a letter signed by both the Chief Engineer and the Director of Operations was sent to Wilson containing this paragraph:

"On the basis of their consideration and review of the material, the Department's Chief Engineer and Director of Operations each concluded that your claims were not meritorious, either from the standpoint of the facts or the relevant contract provisions, and, therefore, that each of the claims should be denied and rejected in its entirety, and they so recommended to the Commissioners of the Department at the meeting of the Commissioners held on January 23, 1963. The Contract Administration Committee and the Department's General Counsel concurred in such conclusions and recommendations of the Chief Engineer and Director of Operations."

The Department's lengthy standard specifications were included by reference in the contracts. Clause 27 thereof reads as follows:

"27. AUTHORITY OF ENGINEER:—The Chief Engineer shall act as referee in all questions arising under the terms of this contract between the parties hereto, and the decision of the

---

1. Department filed a counterclaim for liquidated damages for failure to complete the work within the time allowed by its Chief Engineer; the Court below ruled in Wilson's favor on the counterclaim, and the decision is not presently questioned.

Chief Engineer shall be final and binding. On all questions concerning the interpretation of plans and Standard Specifications, the acceptability, quality, and quantity of materials or machinery furnished and work performed, the classification of material, the execution of the work and the determination of payment due or to become due, the decision of the Chief Engineer shall be final and binding."

In the Court below, following extensive discovery, both parties moved for summary judgment. That Court denied Wilson's motion, and granted Department's application, with leave to Wilson to file an amendment to the complaint. The Court held that the claims herein made were subject to the provisions of Clause 27 and that the Chief Engineer's decision was final in the absence of fraud. Wilson challenges this holding, and contends that its claims are outside the scope of Clause 27, that the Chief Engineer did not in fact make a decision under it, and that, if he did act under it, the facts are such as to show constructive fraud in making his decision.

I

■ Wilson argues that clauses like the one used here providing for final decision of disputes are construed strictly and limited to the kind of matters clearly set forth therein; that the present dispute does not arise under the contract, but from a breach thereof by Department; and that it is not seeking additional payments under the contract, but consequential damages for its breach. It cites a number of cases to support its views, including Pat J. Murphy Inc. v. Drummond Dolomite, Inc., D.C., 214 F.Supp. 496; M. DeMatteo Constr. Co. v. Maine Turnpike Authority, D.C., 184 F. Supp. 907; Faber v. City of New York, 222 N.Y. 255, 118 N.E. 609; Young v. Crescent Dev. Co., 240 N.Y. 244, 148 N.E. 510. These cases were instances where arbitration clauses were construed not to include the particular type of loss claimed or the kind of alleged wrong which produced that

loss. None of them indicates that there is anything inherently wrong legally with a provision naming a referee to resolve disputes between parties, even though the referee be a person employed by one of them; they hold that his power to act extends no further than is granted to him by the terms of the arbitration clause. There are, of course, other cases in which the arbitration clause has been held to cover particular types of. claims or losses. Crumlish v. Wilmington & Western R. Co., 5 Del.Ch. 270; United States v. Moorman, 338 U.S. 457, 70 S.Ct. 288, 94 L.Ed. 256; Anthony P. Miller, Inc. v. Wilmington Housing Authority, D.C., 179 F.Supp. 199; Nelley v. Mayor & City Council of Baltimore, 224 Md. 1, 166 A.2d 234; Kerr v. State of Maine, 127 Me. 142, 142 A. 197; Terminal Constr. Corp. v. Bergen County etc., 34 N.J.Super. 478, 112 A.2d 762. None of the cases cited involves language exactly like that before us. The applicable basic rule is stated in 3A Corbin on Contracts § 652 in these words:

"The issues over which the engineer or architect is given power of decision must be determined by the reasonable interpretation of the contract provision creating such power. Such a provision is not to be expanded so as to include the power to change the performance required by the contract and its specifications, as well as the power to determine whether actual performance complies with plans and specifications, unless the words of the provision clearly so require."

■ In the present case, the referee had the power to resolve "all questions arising under the terms of this contract" * * * "all questions concerning * * * the quantity of materials or machinery furnished and work performed", and "determination of payment due or to become due". By Clause 20 of the Standard Specifications, "the work to be done * * * includes the furnishing of all materials, implements, * * * labor, and all construction and services * * * necessary to fully complete all the work in connection with the

contract". By Clause 21, the Chief Engineer was permitted to make alterations of the contract specifications "in the plans of construction" and "in the quantities of the work or material required"; if those alterations resulted in an increase in the quantity of "work", the contractor was entitled to an increase in payment at the contract unit price. In view of the special definition of "work" in Clause 20, if, as Wilson charges, its losses arose because it was obliged to keep its equipment on the jobs longer than it anticipated, or to make unexpected movements of its equipment, or to move fill unusual distances, or to provide more labor than it expected, the claims clearly involved the "quantity of materials or machinery furnished and work performed" and the "determination of payment due". They were accordingly a type of loss within the power of the referee to determine under Clause 27.

Wilson, however, points to the language in Clause 27 that the referee has the power only to resolve "all questions arising under the terms of the contract". It suggests that the loss here did not arise under the terms of the contract but was caused by a breach of that contract which required Department, at least by implication, to provide rights-of-way promptly and to provide plans and instructions with sufficient promptness and accuracy to enable the contractor to proceed without undue delay. Clause 62 of the Standard Specifications contains this language:

> "If any delay is caused to the contractor by specific orders of the Engineer to stop work or by the failure of the Engineer to provide necessary instructions for carrying on the work or to provide necessary right-of-way, such delay will entitle the contractor to an equivalent extension of time and the equivalent suspension of the liquidated damage charge".

Even if we should hold, contrary to Department's contention, that Clause 62 is non-exclusive and does not eliminate a right to additional payments, the Clause nevertheless shows that the parties, at the time of making the contract, had in mind the possibility of delays caused by failure to provide rights-of-way and the other reasons mentioned therein. Such delays were contemplated and at least partial relief provided therefor in Clause 62. As we have previously indicated, additional payments could be made under Clause 21 for the type of expenses claimed here. We are accordingly of the opinion that these claims were questions arising under the terms of the contract and were therefore within the scope of the referee's jurisdiction.

Wilson makes a contention that the Chief Engineer did not in fact pass upon its claims in his capacity of referee but simply made a recommendation to the Department that no allowance be made. Although Wilson itself did not refer the matter to the referee for decision, the Commission did so. His letter of February 11th, 1963 plainly stated that he had found the claims to be without merit.

II

The Court below declined to pass upon Wilson's contention of fraud on the part of the Chief Engineer in making his finding against Wilson. The contention now made is that the Court erred in this respect, since the motion before it was an application for summary judgment in which the Court looks basically to the evidentiary matters in the record.

According to the record before us, Wilson's motion for summary judgment was argued in the Superior Court on January 18, 1965. At that time, there was no allegation of fraud in any pleading, but Wilson's briefs and arguments raised that question in an attempt to show why the Chief Engineer's finding should not bar its recovery. Department's counsel urged that the argument should not be considered be-

cause the pleadings did not allege fraud. Wilson's position was that no such pleading was required at that stage. The Court made no ruling at that time. On August 20, 1965, while the original motion for summary judgment was still undecided, Wilson filed a motion for leave to amend its complaint by adding a count charging fraud or constructive fraud on the part of the referee. Department resisted the application to amend on the ground that it was untimely filed. In its order of November 1st, 1965, in granting summary judgment in favor of the Department, the Court also granted leave to Wilson to file its amendment within ten days. Both the order and the opinion which preceded it specifically stated that the Court was not passing upon the fraud allegations. In spite of the leave granted to file the amendment, Wilson did not file it within the ten days period, or attempt to do so by the date of its appeal which was taken on December 30, 1965.

It is clear from the record that the Court below made no ruling upon the propriety of raising the fraud question without first pleading it; doubtless it deemed such a ruling premature in view of Wilson's application for permission to plead it. In the Court's order, it gave Wilson exactly what it asked for. The Court, therefore, did not deprive Wilson of any substantial right, whether or not the pleading was necessary; had Wilson filed the amendment it could have had a decision thereon. The question which Wilson now raises was not ruled upon by the Court below because of the failure to comply with the Court's order. We accordingly are of the opinion that Wilson is in no position to ask for a reversal on this ground.

### III

In view of the foregoing conclusions, it becomes unnecessary for us to determine the third question raised concerning the effect of Clause 62 upon Wilson's right to recover additional payments.

*The judgment below is affirmed.*