No. 34,023

M. E. GILLIOZ, an Individual, of Monett, Missouri, *Appellee* and *Cross-appellant,* v. THE CITY OF EMPORIA, *Appellant* and *Cross-appellee.*

(88 P. 2d 1014)

540 

O. L. Isaacs and Everett E. Steerman, both of Emporia, for the appellant and cross-appellee.

J. L. Milligan, C. B. Kimberly and C. H. Kohler, all of Kansas City, Mo., for the appellee and cross-appellant.

The opinion of the court was delivered by

HOCH, J.: This action involves an arbitration award in a controversy between the city of Emporia and a contractor engaged to construct a dam for the city. The award contained fifteen items. The district court approved fourteen items and set one aside. The city appeals as to the fourteen items and the contractor as to the one.

The arbitration proceedings were conducted under the Kansas law relating to arbitration and therefore must be considered with regard to the statutory requirements. Not only did the construction contract provide for arbitration in case of dispute, but the "agreement of submission to arbitration," entered into on July 17, 1937, between the city of Emporia and M. E. Gillioz, contractor, of Monett, Mo., provided that the controversy was submitted "in accordance with the provisions for arbitration, on pages 10 and 11 of said contract, and otherwise, in accordance with the laws of the state of Kansas in such cases made and provided," and the parties specifically agreed "to make this submission to arbitration a rule of the district court of Lyon county, Kansas."

Under the agreement the city chose E. B. Black, of the engineering firm of Black & Veatch, of Kansas City, Mo., as a member of the board; the contractor chose W. R. Holway, of Tulsa, Okla., and it was provided that these two should designate a third arbitrator. They chose D. A. MacCrea, of Little Rock, Ark., who was made chairman.

The matters submitted were definitely set out. The agreement recited that a controversy had arisen over "certain claims made by the contractor for compensation in addition to the amounts certified to him by the final estimate of the city's engineers under said contract." These "certain claims" consisted of fifteen separate items, which were marked "Exhibit A," and by reference made a part of the submission agreement.

The agreement provided that "The award made by the board of arbitrators herein shall be final and conclusive, and binding upon

both parties, as to all claims above mentioned, and as to all causes of action, except as otherwise provided in the statutes of the state of Kansas."

The agreement further provided that the board should make its own rules governing procedure, and contained various provisions which will be noted later to the extent necessary for determination of the matters at issue.

The board was duly organized, held hearings at Emporia from August 23 to August 27 and on September 17, 1937, and on October 12, 1937, filed with the clerk of the district court of Lyon county its report and award, including its answers to special questions submitted by the city. Separate report was made on each item. Three were denied entirely, eight were reduced, three were fixed at the amount claimed and one was slightly increased. The total amount claimed was $37,832.26. The total amount awarded was $17,598.94. The report of the board was unanimous on all fifteen items.

It would serve no helpful purpose to recite here the various motions and other procedural steps taken. Suffice it to say that the matter was regularly heard by the district court of Lyon county and judgment entered. The court sustained the award on all items except item 12, which was set aside. A slight correction agreed upon by the parties was made on item 14. Judgment was entered against the city in the sum of $16,807.35 with interest thereon at six percent from October 12, 1937, until paid.

In its motion to set aside the award the city alleged that—

". . . said award was illegally made, that said board illegally received evidence and based its award thereon, and violated and set aside terms and provisions of the submission agreement and of the construction contract, misbehaved and was biased and prejudiced against the city and was partial to the contractor, and that said award, in several items, is not based upon evidence. . ."

The city also contends that the trial court erred in rejecting certain evidence offered in support of its motion to set aside the award.

It is well to state at the outset two or three general rules of law here applicable. The first one is that the arbitration award having been made under the statute can only be set aside for reasons stated in the statute. (5 C. J. 200, 205; *Russell v. Seery,* 52 Kan. 736, 35 Pac. 812; *Weir v. West,* 27 Kan. 650; *Thompson v. Barber,* 87 Kan. 692, 125 Pac. 33.) The second one is that the report of the arbitrators is to be liberally construed and all reasonable doubts resolved

in support of the award. (5 C. J. 205, 244; *Russell v. Seery*, 52 Kan. 736, 35 Pac. 812.)

The statute (G. S. 1935, 6-111) names three grounds upon which an award may be set aside: (1) Legal defects. (2) Fraud, corruption or other undue means. (3) Misbehavior of the arbitrators.

Before taking up the attacks upon the award itself, let us consider the city's contention that the court erred in refusing to receive certain testimony offered in support of the motion to set aside the award. The court admitted in evidence all the files in the case, the original construction contract, the arbitration agreement, the plans and specifications and certain other written exhibits offered by the city. The proffered evidence which was not admitted consisted of various exhibits and testimony that had been presented to the board during the hearings. No stenographic record of the proceedings before the board had been made. At the opening of the hearing the city asked that the testimony be taken down, but the board decided not to do so. Under the terms of the agreement it was clearly within the discretion of the board whether a stenographic record should be made. The court declined to admit testimony offered at the hearing on the ground that it was not the function of the court, under the arbitration statute, to hear *de novo* the matters heard by the board, and that it would be manifestly improper to receive and consider only part of the testimony when the whole record of the board's proceedings was not available. The position of the trial court in this matter was correct. (5 C. J. 179, 181.) The court stated that it would receive any competent testimony to show that the award should be set aside for reasons set out in the statute.

A preliminary issue may be disposed of before proceeding to the substantive questions. The contractor contends that the court was without jurisdiction to hear the city's motion to set aside the award because it was not verified. The statute provides that the award may be set aside if any legal defects appear in the award or other proceedings, or if it is made to appear "on oath or affirmation, that said award or umpirage was obtained by fraud, corruption, or other undue means, or that said arbitrator or umpire misbehaved." For several reasons the contention furnishes no basis for reversal. Whether the provision applies to pleadings or motions we need not here consider. No attack on the motion was made at the hearing on the ground that it was not verified. The matter was heard by

the court without objection and the question of verification was raised for the first time on this appeal. In any event, if error, it was harmless error.

We come to the real questions in issue—were there "legal defects" in the award, was there "fraud, corruption or other undue means" used, or was there proof of "misbehavior?" The second question may be summarily disposed of. A careful search of the record reveals no evidence whatever of fraud, corruption or other undue means.

We consider next the allegations of "misbehavior." While various more or less hazy imputations of "misbehavior" are made by the city, as far as the record before us goes, the allegation simmers down to one specific contention. It is alleged that as to item 12 the board stated in effect that it made an award without any evidence to support it, and that such conduct constitutes misbehavior which vitiates the whole report and award. The matter will be discussed more fully in connection with consideration of the individual items. Suffice it to say here, that for reasons there stated we agree with the trial court that the board's report on this item proves no such "misbehavior" as to justify setting aside the whole report.

We consider now the alleged "legal defects" in the award. The city contends that the board exceeded the authority granted in the submission agreement, that it made an award not based on claim submitted, and that it made awards without evidence to support them. Before considering the individual items in the light of these allegations we shall dispose of a contention that the board exceeded its authority by delegating some of its responsibility to others whose findings were not made available to the city. In its report the board stated that it had before it the testimony offered on both sides, including maps, plans, calculations, sections, etc., that it had made a personal inspection of the project, and then added the following statement which furnishes the grounds of the city's attack:

"The board employed the firm of Tuttle, Ayers, Woodward, engineers, to check all calculations on quantities submitted by the contractor and by the city, and to make a report to the board thereon. These calculations and reports were checked personally by Mr. W. M. Spann, who has a long record as engineer on design and construction, not only with the Missouri Highway Commission and later with the city of St. Joseph, Mo., and Jackson county, Missouri, and still later as PWA engineer and director for the state of Missouri. The board has made its findings based on a consideration of all these things in arriving at its conclusions in its report and award mailed to the parties to the arbitration agreement on September 22, 1937."

The arbitration agreement provided that the board should have the power "to employ an engineer, stenographer, or such other help as it may consider necessary in order properly to determine the matters considered." Clearly this empowered the board to employ technical and clerical help. There is nothing to indicate that the outside firm did anything except to check calculations on quantities. We find nothing in that to vitiate the proceedings.

Reference need not be made here to items 7, 8 or 13, since the board made no allowance on those items. Items 14 and 15 may also be omitted from consideration as the city makes no serious attack upon them. Items 2, 3, 4 and 5 cover claims for extra excavations and backfill, and from a careful examination of the whole record we find no evidence whatever of legal defects in the awards. What the city really asked the trial court to do, and asks this court to do, is to try the case *de novo* on these items. That is not the function of the court in the matter. As to item 9, the essence of the city's contention is that the amount allowed was grossly excessive. The comment just made again applies. The same principle applies also with reference to item 11, which was a claim based upon a shut down of the elevating grader. The claim was clearly submitted, the board heard the evidence and determined the matter.

This leaves for consideration items 1, 6, 10 and 12. In the awards on items 1 and 6 lies the heart of the city's contention that the board exceeded its authority. Item 1 was—

"12,299.8 cubic yards of embankment at $0.27, $3,320.95. Material ordered placed in false berm which should have been incorporated in class B embankment."

On this item the board allowed $594. Item 6 was—

"1,917.1 cubic yards extra rock excavation at $2, $3,834.20. Rock excavation encountered in spillway for which no payment has been allowed."

The board allowed $3,834.

The city calls attention to certain provisions of the submission agreement which limit the board's authority, and contends that these limitations were disregarded in passing upon these items. The "limitations" are found principally in paragraph (6) and the latter part of paragraph (8) of the agreement. Paragraph (6) provides:·

"The board shall not have power to alter the original intent of the plans and specifications, nor to determine the quality of material or workmanship furnished by the contractor. The board shall have no authority or power to set aside the terms or requirements of the contract."

The latter part of paragraph (8) provides:

"It is understood that, by entering into this agreement of submission to arbitration, and by incorporating the contractor's claim herein, the city does not admit or concede the existence of any of the facts, or accept as correct any of the items as set out, or assumed, in said claim, nor admit any liability on any part thereof."

Provisions of paragraph (8) require little comment. They amount to little more than saying that the city does not admit the validity of the contractor's claims. That was already obvious. Otherwise, there would have been no occasion for arbitration.

But on these items did the board exceed its authority? The city says it did in that it "interpreted the plans and specifications," altered terms of the contract· and "determined the quality of material" in disregard of the limitations above referred to. We agree with the trial court that if on these items it did so, it did only what the items showed on their face had to be done to determine the issues. For instance, the claim on item 6 was for extra rock excavation in the spillway. The contract provided for payments on the unit basis—so much per yard for rock excavation, so much for dirt excavation, etc. The city contends that the board was here passing upon "quality." We do not think so. They were not passing upon *quality,* but upon whether excavation of material of a certain *character* was excavated and in the quantity stated in the claim. In any event they were merely determining the question clearly submitted to them. As to item 1, it is contended that in passing upon the question of "material ordered placed in false berm which should have been incorporated in class B embankment" the board ignored the fact that it was the exclusive privilege of the consulting engineer to determine whether material excavated was proper "for incorporation in the class B embankment" and that they therefore overrode the plans and specifications. But again, this was the very matter, specifically set out, which the city had agreed to submit to arbitration. It must be obvious that where matters are clearly submitted to arbitration neither party can be heard to say, after the award has been made, that the arbitrators had no right to determine the question submitted to them. And no general words inserted in the agreement can give them such a right. Otherwise, a party to a controversy could accept the award if it is in his favor and upset it if it is against him.

The award on item 12 was set aside by the trial court on the

ground that it was vitiated by the board's answer to certain questions submitted by the city, and as to that item the contractor appeals. Quotations from the record will disclose the issue. The claim read as follows:

"Delay on equipment *waiting for decision of Consulting Engineer on core trench approval.*

| | |
|---|---|
| Dragline, 84 hours at $5.00 | $420.00 |
| Pump, 84 hours at $0.60 | 50.40 |
| 1 foreman, 84 hours at $0.5833 | 49.00 |
| 2 pump men, 168 hours at $0.50 | 84.00 |
| Dragline operator, 84 hours at $1.333 | 111.97 |
| 1 oiler, 84 hours at $0.60 | 50.40 |
| 4 laborers, 336 hours at $0.40 | 134.40 |
| Insurance on $429.77 at $6.827 | 29.34 |
| Plus 20 percent on $459.11 | 91.82 |
| Total | $1,021.33" |

The board allowed $786.

Questions were submitted to the board and the questions, together with the answers said to vitiate the findings, were as follows:

"A. Was the dragline being operated?

"B. Was the pump being operated?

"C. Were other sections of the core trench yet to be excavated?

"D. Could not the dragline have been operating in other sections of core trench or elsewhere?

"E. Could it not have been operated in the spillway? If not, why not?

"F. Upon what does the board base the allowance on account of machinery? Does not the allowance also cover operating cost?

"G. Does the board find that the men were paid and were not working anywhere?

"In answer to questions A to E under item No. 12, no testimony was offered pertaining to any of these matters. The questions should have been asked of the contractor's witnesses when they were on the stand and not addressed to this board.

"In answer to question F, the contractor's claim was based on an allowance for the use of machinery, an allowance which the board finds reasonable as in the case of the machinery in question in item No. 11. The board did deduct the claim for common labor which we assumed was being used or could have been used in other operations."

The city strenuously urges that the board's answer "no testimony was offered pertaining to any of these matters. The questions should have been asked of the contractor's witnesses when they were on the stand and not addressed to the board," not only shows that an award was made without any evidence, but that it establishes such "mis-

behavior" as to vitiate the whole report. The trial court set aside the award on this item on the ground that the answer revealed that no evidence supported it. On its face the statements made clearly bear that construction, though we have not found that question entirely free from doubt. The claim was for "delay on equipment waiting for decision of consulting engineer on core trench approval." It will be noted that the equipment involved was a "dragline" and a "pump." The city correctly says that the essence of the claim was for loss due to *idleness* of the equipment. Apparently no one asked the contractor's witnesses whether the interruption in use of the equipment *on the core trench* prevented its use elsewhere on the job and whether as a matter of fact it was so used. We can appreciate the board's comment that if the equipment was being used elsewhere, or could have been so used, the city might well have developed that fact at the hearing. However, it was not only the duty of the contractor to establish fully the facts on which he based his claim, but the board itself is not entirely free from criticism in not itself asking the questions. It was there to get the facts and the further inquiry was of obvious importance. In view of all the facts we sustain the action of the trial court in setting aside the award as to this item. As we have already indicated, however, it would be a wholly unjustified magnifying of the matter to hold that the board's action on this item was "misbehavior" which vitiates the whole report.

There remains item 10, which reads as follows:

"Rehandling 6,120 cubic yards of stone at $0.50, $3,060. Due to delay in receiving definite instructions from engineer regarding size of rip-rap it was necessary to rehandle above amount of stone in and around the quarry."

The report of the board was as follows:

"Claim item No. 10 covers rehandling of 6,120 cubic yards of stone rip-rap at a cost of $3,060, due to delay in receiving definite instructions from the city's engineer concerning size of rip-rap.

"The evidence shows a disagreement between the plans and the specifications as to size of rip-rap. The controversy between the city and the contractor as to this item covered the period from April 22 to July 23, 1936, at which last date, a change order was approved fixing the size of rip-rap. In the meantime, the contractor had necessarily proceeded with the quarrying of the stone and the 6,120 cubic yards involved had to be re-cut to fit the new dimensions, and the stone had to be handled at greater differences in elevation on the face of the dam than would have been necessary had the rip-rap been placed as the dam was raised. The board finds the contractor is entitled to an extra allowance of $3,000 on this item."

The city goes extensively into the questions relating to the rip-rap—the alleged discrepancy between the plans and specifications as to the size of the rock required, the alleged physical impossibility of "re-cutting" the stone as the board implies the contractor did, etc. Much of. the city's argument consists merely of an analysis of the evidence which, as heretofore stated, was a matter for the board, and not for the court. While all the contentions made by the city against this item have been painstakingly examined, there is no need to review them in detail. We conclude that one contention made in the motion to set aside the award on this item, and renewed in the appeal, is well founded. It will be noted that the claim was based solely on *"rehandling the stone in and around the quarry."* In its comment the board not only says that the stone "had to be re-cut to fit the new dimensions"—which might reasonably come within a claim based on *"rehandling"*—but also bases its award, in part at least, on increased cost due to handling the stone *"at greater differences in elevation on the face of the dam* than would have been necessary had the rip-rap been placed as the dam was raised." It may be true, as the board indicates, that the delay also caused loss in connection with *placing the rip-rap on the face of the dam.* The trouble about it is that the claim as submitted alleges no such factor of increased cost. The claim only alleges loss incident to rehandling the stone *"in and around the quarry."* Providing an award for something not submitted in a claim clearly constitutes a "legal defect." (5 C. J. 124; *Clark v. Goit,* 1 Kan. App. 345, 41 Pac. 214.) Since the award is made in one lump sum there is no way to determine from the record what part of the amount was based on additional cost in *laying* the rip-rap. There being no way to segregate the factors, the award on item 10 must be set aside.

In harmony with the findings heretofore made, the judgment of the district court is affirmed except as to item 10, as to which item the award is set aside, and the case is remanded with directions to modify the judgment accordingly.