No. 52,336

EVANS ELECTRICAL CONSTRUCTION COMPANY, INC., *Plaintiff-Appellant,* v. UNIVERSITY OF KANSAS MEDICAL CENTER and BOARD OF REGENTS OF THE STATE OF KANSAS, *Defendants-Appellees.*

(634 P.2d 1079)

Opinion filed October 23, 1981.

*Fred Murdock,* of Kansas City, Missouri, argued the cause, and *Gordon R. Gaebler,* of Svoboda & Gaebler, P.C., of Kansas City, Missouri, and *Fred N. Six,* of Barber, Emerson, Six, Springer & Zinn, of Lawrence, were with him on the brief for the plaintiff-appellant.

*Richard D. Simpson,* of Cooke, Ballweg, Borth, Wilson & Simpson, of Prairie Village, argued the cause, and *Jerry W. Dickson,* of North, Lancaster & Dickson, of Overland Park, special assistant attorney general, was with him on the brief for the defendants-appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action in which an electrical contractor seeks to set aside an arbitration award which followed a dispute arising from the construction of a basic science building at the Kansas University Medical Center. The plaintiff-appellant, Evans Electrical Construction Company, was the successful bidder on the electrical contract for the new building. The defendants-appellees are the University of Kansas Medical Center and the Board of Regents of the State of Kansas. We will refer to them as the State. The basic science building was to be used as a classroom facility. Approximately 1.2 million dollars was appropriated by the Kansas legislature for the entire project. The balance was to be paid by a 4.475 million dollar federal construction grant. The federal grant carried a time constraint of twelve months from September 1972, to advertise for bids. Plans were hurriedly prepared by Marshall & Brown-Sidorowicz, architects in Kansas City, who in turn hired Burgess, Latimer & Miller as associate engineers to prepare drawings and specifications for the mechanical and electrical work. Before the final bid return date, there were six addenda issued totaling 125 pages. The addenda activity was unusually voluminous and the district court found that it was sufficient to alert everyone from architects, to state employees, to bidders that the initial architectural plans had more problems than usual at this stage.

Evans Electrical, after reviewing the plans and specifications together with all of the addenda, submitted a bid on the electrical contract. It was awarded the electrical contract on November 27, 1973. At that time, the chairman of the board of Evans Electrical knew that there were problems and anticipated that there would be more. However, he had an abiding faith that any additional problems would be resolved fairly between the parties. Thereafter, problems did arise.

Before discussing in detail the problems which arose during the course of construction, it is necessary that we consider two provisions in the contract entered into between the parties. It is first important to note that the contract provided, in substance, that all claims and disputes arising out of the contract or a breach thereof, with certain exceptions not relevant here, should be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association

then obtaining, unless the parties mutually agreed otherwise. The contract provided that the agreement to arbitrate should be specifically enforceable under the prevailing arbitration law and that the award rendered by the arbitrators should be final, and judgment could be entered upon by it in accordance with applicable law in any court having jurisdiction thereof.

The second significant provision of the contract which should be noted is Article 12 of the General and Supplementary Conditions which covered the subject of changes in the work. This article, in substance, provided that all changes in the work within the scope of the contract consisting of deletions or other revisions should be authorized only by a written change order, signed by the owner and architect, authorizing an adjustment in the contract work or contract time. With these contract provisions in mind, we turn now to the problems which arose during construction.

In its memorandum decision, the district court made the following findings of fact. Work began on the project in the spring of 1974. The general contractor (Thomas) began having immediate problems. By June 1974, the state architect's office knew that the plaintiff would have problems although only one percent of the plaintiff's work was completed. By July 9, 1974, the general contractor, the mechanical contractor, and the plaintiff all became increasingly concerned with the way things were going and made their concerns known to the State. There were conflicts in the placement of mechanial and electrical facilities which plaintiff's employees had just not noticed before. The construction superintendent characterized the architectural plans as the worst set he had ever worked with in his life. By the spring of 1975, the plaintiff had quite a list of possible mechanical and electrical interferences and there were a series of meetings in which complaints by plaintiff and other contractors were aired. The district court found that in the June 1975, meeting with the representatives of the State, Evans Electrical was told to follow the contract and request change orders where necessary, and the state architect's office would then decide on the appropriateness of the requests.

At the arbitration hearing and again in district court, the plaintiff hotly contested the necessity for written change orders. Plaintiff contended, in substance, that the representatives of the State agreed with plaintiff that written change orders would not

be necessary and that plaintiff should proceed to do the work and that it would be properly compensated for any additional work. The State denied that there was any novation or agreement by the parties to depart from the requirement of written change orders. The district court resolved this issue of fact in favor of the State, finding that there was no novation and that the contract provision for written change orders remained in full force and effect.

The trial court, in its findings, noted that a two percent contingency fund in the amount of $112,000 was provided for under the contract. This fund was to take care of unanticipated work and cost overruns. The total written change orders actually authorized amounted to $153,935 and of that amount, approved change orders submitted by plaintiff amounted to $51,590. These were paid. The contingency fund was later expanded some $42,000 to cover this amount. There were other avenues of resources available to pay for change orders, including gift funds. The early depletion of the contingency fund underscores the depth of the problem. In its findings, the district court found that the State's employees did not at any time act in a fraudulent manner. The contingency fund was expanded to pay all change orders and the trial court found no reason that additional change orders would not have been paid from one of the alternate sources of funds. Although the architectural plans were a source of embarrassment to the state architect's office and errors and conflicts in the plans were extensive, the trial court found nothing fraudulent in the concern or advice given the plaintiff by the state architect's office. The State's employees continuously told the contractor to follow the contract even if there were conflicts, unless the State issued a written change order. The district court concluded that was what the plaintiff should have done.

The building was completed in the fall of 1976. In December 1976, the plaintiff requested arbitration of its claims against the State under the terms of its contract despite the fact that no monies were then in hand for payment. The mechanical and general contractors also asked for arbitration. In each instance, an arbitration was conducted and awards were made in all three cases. The arbitration award obtained by the general contractor and mechanical contractor were subsequently paid by appropriations made by the legislature. The arbitration award in the dispute between Evans Electrical and the State has been tendered

and funds to pay it are presently being held by the clerk of the district court.

In its claim presented for arbitration, Evans Electrical contended that it was entitled to $333,396.32 for additional work performed over and above the contract price. After a full hearing in which the parties had an opportunity to present their evidence, an arbitration award was entered in favor of plaintiff in the amount of $24,342. Evans Electrical was dissatisfied with the amount of the arbitration award and filed this action in the district court of Douglas County seeking to have the arbitration award set aside. In the trial court, the plaintiff contended that, as a matter of law, an arbitration clause in a construction contract is illegal when the State is one of the contracting parties. The district court rejected this contention. This issue is again raised on the appeal and will be discussed later in the opinion.

The case proceeded to trial by the court. At the trial, the plaintiff contended that the evidence established that the arbitration award was procured by fraud, corruption, and undue means. The trial court found no fraud, corruption, and undue means in obtaining the arbitration award and upheld the award. The plaintiff then brought a timely appeal to this court, raising three basic issues. We will consider each of these issues separately.

The first point raised by plaintiff on the appeal is that the arbitration proceedings and the resulting award were void and unenforceable and must be vacated. The plaintiff maintains that governmental bodies cannot be bound by agreements to arbitrate and, hence, provisions for arbitration in a State contract were unenforceable against any party to the contract. Plaintiff argues, in substance, that an arbitration clause in a state construction contract would amount to an unconstitutional delegation of authority by taking away from the state legislature the power of appropriation.

Plaintiff relies primarily on *U.S. v. Ames,* 24 F. Cas. 784 (C.C.D. Mass. 1845). In *Ames,* the court held that an official of the United States could not obligate the United States government to binding arbitration, absent some statutory authority for his actions or subsequent ratification by the state legislature. The State, in its brief, points out that today arbitration is now sanctioned by statutes of the United States and of most state jurisdictions, including Kansas. Furthermore, the State contends that *Ames* is

distinguishable from the case now before us because in this case the legislature has ratified the arbitration award by specifically appropriating funds to pay the award.

The plaintiff also cites cases from other jurisdictions which involve arbitration clauses in collective bargaining agreements between governmental agencies and their employees. *Bd. of Trustees v. College Teachers Union,* 74 Ill. 2d 412, 386 N.E.2d 47 (1979); *Susquehanna Val. School Dist.,* 37 N.Y. 2d 614, 376 N.Y.S. 427, 339 N.E.2d 128 (1975). None of these cases deal with the question whether an arbitration agreement is illegal per se. In this regard, we note 5 Am. Jur. 2d, Arbitration and Award §§ 67 and 68, which cite a number of cases holding that, unless prohibited by statute, governmental agencies may lawfully enter into valid contracts for arbitration of disputes and are bound thereby the same as any other party.

In our judgment, this issue was settled in Kansas when the legislature adopted the Uniform Arbitration Act (K.S.A. 5-401 *et seq.*) in 1973. We note, in particular, that K.S.A. 1980 Supp. 5-401 provides as follows:

"**5-401. Validity of arbitration agreement.** A written agreement to submit any existing controversy to arbitration or a provision in a written contract, other than a contract of insurance or a contract between an employer and employees or between their respective representatives, to submit to arbitration any controversy, other than a claim in tort, thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract."

It is important to note that K.S.A. 1980 Supp. 5-401 provides only two exceptions in the statute: (1) a contract of insurance and (2) a contract between an employer or employee or between their respective representatives to submit a controversy to arbitration. The legislature, in its wisdom, did not deem it desirable to exempt the State and its political subdivisions from the statute. We find no legal reason why the state agencies in this case could not enter into a valid agreement for arbitration as a part of the construction contract entered into between the parties in 1973. In this regard, the district court properly suggested that, by failing to exclude contracts involving government agencies, the State was moving to avail itself of the simplicity of arbitration which private builders and owners enjoy.

It should be noted, however, that the Kansas legislature in

1979, possibly as a result of this litigation, enacted K.S.A. 1979 Supp. 75-3741 (*b*) (4) which provides as follows:

"(4) The secretary of administration shall adopt, with the advice of the state building advisory commission, a standard contract for use in connection with projects upon which bids are let for the project as a whole and a separate standard contract for each of the portions of a project for which bids are let independently. *No such standard contract adopted by the secretary of administration shall contain any provisions authorizing arbitration of any matters thereunder."* (Emphasis supplied.)

This statute, by its express terms, applies only to contracts for the construction and improvement of public buildings. We see no reason why the 1979 statute should be applied retroactively to a contract entered into in 1973.

The plaintiff, however, directs our attention to K.S.A. 75-3025 which provides as follows:

"**75-3025. Contracts for excessive expenditures; penalty.** Any officer or agent of the state who shall be empowered to expend any public moneys, or to direct such expenditures, is hereby prohibited from making any contract for the erection or repair of any building, or for any other purpose, whereby the expenditure of any greater sum of money shall be contemplated, agreed to, or required, than is expressly authorized by law; and any officer or agent of the state violating this law shall be deemed guilty of embezzlement of the amount in excess of that expressly authorized by law, and upon conviction shall be punished by confinement and hard labor not exceeding five years, or in the county jail not less than six months."

The plaintiff takes the position that the provision for arbitration in the construction contract in this case contemplated and made express provision for additional compensation without any provision for payment by funds appropriated by the legislature. Plaintiff reasons that such a clause permits the arbitration of claims which could lead to an arbitration award to be paid by the State in excess of sums appropriated by the legislature which would be illegal under the provisions of K.S.A. 75-3025. The district court, prior to trial, held that K.S.A. 75-3025 is a penal statute and whether or not it was violated would be a question of fact for determination at the trial. Following the trial the court, in its memorandum decision, found that no one intentionally violated the statute. The court noted that, at the time of the signing of the contract, the contingency fund seemed adequate to pay for the full cost of construction and there was no reason to believe that additional written change orders could not have been paid from one of the alternate sources of funds.

We agree with the trial court that there was no substantial

evidence indicating that any of the state employees involved had the intention to violate K.S.A. 75-3025. The parties simply agreed to submit to arbitration all claims arising out of the construction contract. We hold that both Evans Electrical and the State were entitled to the enforcement of their contract including the right to compel arbitration of a claim for extra costs and expenses. The provision for arbitration simply provided a method for settling disputes. The payment of an arbitration award from State funds is not an issue before us in this case. The payment of any arbitration award or judgment of a court against the State is customarily satisfied by legislative appropriation.

One other matter should be noted before concluding a discussion of this issue. It is undisputed that Evans Electrical made the demand for arbitration. The arbitration proceedings were conducted and completed with its full participation and consent. K.S.A. 5-402 provides for an action to compel or stay arbitration. Under that section, a district court may determine whether or not a valid agreement for arbitration exists. If fraud in the arbitration proceedings exists, the district court may stay the arbitration proceedings. Here plaintiff made no attempt to obtain a stay of arbitration under that section. The State suggests that plaintiff should be estopped to deny the validity of the arbitration proceedings. We do not find it necessary to determine the estoppel issue, since we have held that the arbitration provision in the contract in question was valid and enforceable between the parties and was not in violation of state law. On the basis of the reasons set forth above, we have concluded that the plaintiff's first point is without merit and that the arbitration proceedings and resulting award were valid and enforceable.

Plaintiff's second point on the appeal is that the trial court erred in its refusal to vacate and set aside the arbitration award for the reason that, under the evidence, the arbitration award was shown to have been procured by fraud, corruption, and undue means. It would be helpful to note the Kansas statutory provisions and case law governing the power of a district court to set aside an arbitration award. We note the following statutes in particular:

"5-411. **Confirmation of an award.** Upon application of a party, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in K.S.A. 5-412 and 5-413."

"5-412. **Vacating an award.** (a) Upon application of a party, the court shall vacate an award where:

"(1) The award was procured by corruption, fraud or other undue means;

"(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

"(3) The arbitrators exceeded their powers;

"(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of K.S.A. 5-405, as to prejudice substantially the rights of a party; or

"(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under K.S.A. 5-402 and the party did not participate in the arbitration hearing without raising the objection;

"But the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.

"(b) An application under this section shall be made within ninety (90) days after delivery of a copy of the award to the applicant, except that, if predicated upon corruption, fraud or other undue means, it shall be made within ninety (90) days after such grounds are known or should have been known.

"(c) In vacating the award on ground other than stated in paragraph (5) of subsection (a) of this section, the court may order a rehearing before new arbitrators chosen as provided in the agreement, or in the absence thereof, by the court in accordance with K.S.A. 5-403, or, if the award is vacated on grounds set forth in paragraphs (3) and (4) of subsection (a) of this section, the court may order a rehearing before the arbitrators who made the award or their successors appointed in accordance with K.S.A. 5-403. The time within which the agreement requires the award to be made is applicable to the rehearing and commences from the date of the order.

"(d) If the application to vacate is denied and no motion to modify or correct the award is pending, the court shall confirm the award."

"5-413. Modification or correction of award. (a) Upon application made within ninety (90) days after delivery of a copy of the award to the applicant, the court shall modify or correct the award where:

"(1) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

"(2) The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

"(3) The award is imperfect in a matter of form not affecting the merits of the controversy.

"(b) If the application is granted, the court shall modify and correct the award so as to effect its intent and shall confirm the award as so modified and corrected. Otherwise, the court shall confirm the award as made.

"(c) An application to modify or correct an award may be joined in the alternative with an application to vacate the award."

It is well settled that, where an arbitration award is made pursuant to statute and filed for judgment and is attacked by one of the

parties, it is not the function of the district court to hear the case de novo and to consider the evidence presented to the arbitrators. Such an award can only be set aside on grounds provided in the statute. *Gillioz v. City of Emporia,* 149 Kan. 539, 88 P.2d 1014 (1939).

In *Coleman v. Local No. 570,* 181 Kan. 969, 317 P.2d 831 (1957), this court held:

"Where parties have agreed to be bound by a submission to arbitration, errors of law and fact, or an erroneous decision of matters submitted to the judgment of the arbitrators, are insufficient to invalidate an award fairly and honestly made. Nothing in the award relative to the merits of the controversy as submitted, even though incorrectly decided, is ground for setting aside an award in the absence of fraud, misconduct or other valid objections." Syl. ¶ 4.

The rule of *Coleman* has been recognized in K.S.A. 5-412. In the present case, the plaintiff attacks the award on the basis that the award was procured by fraud, corruption, or undue means. This issue was submitted to the district court as a factual issue. The trial court found that the plaintiff had failed to prove that the arbitration award was procured by fraud, corruption, or undue means. Where a challenge on appeal is to the sufficiency of the evidence to sustain the findings of the trial court, the function of the appellate court is to determine whether there is evidence to support the findings and if such is found, the decision of the trial court will not be disturbed on appeal. *Jones v. Smith,* 1 Kan. App. 2d 331, 564 P.2d 574, *rev. denied* 225 Kan. 844 (1977); *Schaake v. McGrew, et al.,* 211 Kan. 842, 508 P.2d 930 (1973). We have examined the evidentiary record in this case and have no hesitancy in concluding that there is substantial competent evidence to support the findings of the trial judge that the arbitration award was not procured by fraud, corruption, or undue means.

We further find that there is no merit in the plaintiff's contention that the evidence requires a finding that the parties agreed not to be bound by the provision in the contract requiring written change orders as a basis for the payment of sums to the contractor over and above those provided for in the contract. Although the evidence was disputed on that issue, the findings of the trial court that there was no novation is supported by the evidence. In this regard, we note that, throughout the course of the construction, Evans Electrical submitted and obtained approval for written change orders for which it was paid a total of $51,590. The plaintiff was granted change orders on seven different occasions

between September 17, 1974, early in the construction, and October 7, 1976, shortly before the construction was completed. Some of these change orders were specifically allowed because of relocation of walls, ducts, etc. The plaintiff must have considered the contractual provision requiring written change orders to be in full force and effect, since it complied with that provision at times during the entire course of construction.

The last point raised by the plaintiff is that the arbitration proceedings and award must be vacated for the reason that the gross inadequacy of the arbitration award is intrinsic evidence of fraud, bias, partiality, and prejudice. In support of this contention, the plaintiff notes that it sought to recover in excess of $333,000 and the arbitrators awarded the plaintiff only $24,342. The plaintiff contends that this shows that the arbitrators were guilty of fraud, bias, partiality, and prejudice as a matter of law. We find no merit in this contention. Other than the claimed disparity, there is no evidence in the record from which the court could have found that the arbitrators were in any way biased or prejudiced against plaintiff. The State, throughout this litigation, contended that plaintiff's extra expenses were the direct result of plaintiff's failure to follow the contract provisions and that the increased payments sought were not justified. The burden of proof was upon the plaintiff to establish its claim. The arbitrators were not obligated to accept plaintiff's claimed damages at their face value. We find no basis for setting aside the arbitrator's award simply because of the disparity between the amount claimed and the amount awarded.

The judgment of the district court is affirmed.