No. 54,594

FOLEY COMPANY, *Appellee,* v. GRINDSTED PRODUCTS, INC, *Defendant,* and NIRO ATOMIZER INC., *Appellant,* and JOHNSON COUNTY AIRPORT COMMISSION, *Defendant.*

(662 P.2d 1254)

Opinion filed April 29, 1983.

*L. Franklin Taylor,* of Payne & Jones, Chartered, of Olathe, argued the cause, and *Keith Martin,* of the same firm, and *Timothy L. Mullin, Jr.,* of Miles & Stockbridge, of Baltimore, Maryland, were with him on the brief for appellant.

*R. W. Miller,* of Miller and Glynn, P.C., of Kansas City, Missouri, argued the cause, and *Kevin E. Glynn, Weldon H. Fannen* and *W. J. DeBauche,* of the same firm, and *James M. Sheeley,* of Kansas City, were with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is a dispute between plaintiff subcontractor, Foley Company, and defendant general contractor, Niro Atomizer, Inc., concerning the confirmation of an arbitration award by the district court. Defendant Niro appeals from the judgment of the district court confirming and refusing to vacate the arbitration award entered in favor of plaintiff Foley.

Niro entered into a general construction contract with defendant Grindsted Products, Inc. (which is not a party to this appeal), whereby Niro was to construct a chemical processing facility on premises located in Olathe, Johnson County, Kansas, and leased to Grindsted by defendant Johnson County Airport Commission (also not a party to this appeal). Subsequently on July 5, 1979, Niro entered into a subcontract with Foley whereby Foley was to perform various piping and pipeline portions of the general

contract. Foley completed performance of the subcontract on June 9, 1980. Foley then billed Niro for $437,386.85. Niro refused to pay the same and on August 29, 1980, Foley filed a mechanic's lien statement on the premises. On October 2, 1980, in Johnson County District Court, this action was commenced by Foley to foreclose the mechanic's lien.

On November 18, 1980, Niro filed its motion to stay the mechanic's lien foreclosure action and to compel arbitration of the dispute pursuant to article XII of the contract which provides:

"XII. ARBITRATION:

"The Contractor and the Subcontractor agree to attempt to resolve by negotiation any controversy or claim arising out of or relating to this Subcontract or any alleged breach thereof or default thereunder; however, if any such dispute cannot be resolved by negotiation, then such controversy or claim shall be settled by arbitration. Each of the parties shall designate an arbitrator, and the arbitrators so designated shall in turn select a third. The ruling of a majority of such arbitrators will be binding upon all parties. If the parties agree, the dispute may be submitted to an arbitrator mutually agreeable to both parties. Any arbitrator shall be selected from those individuals having expertise in the area of dispute. Such arbitrator shall be required to agree that he will keep confidential any information furnished by the parties hereto which qualifies as confidential information under the terms of this Subcontract. The rules and regulations of the American Arbitration Association shall govern, except to the extent that the arbitrators designated hereunder by a majority decision, shall determine otherwise. In the event the parties cannot agree upon arbitrators, as herein provided, then such arbitration shall be had pursuant to the rules and regulations of the American Arbitration Association. Any judgment or award rendered pursuant to arbitration as herein provided shall be final and binding in all respects upon the parties. It is expressly agreed by the parties that the arbitrators shall apply to each dispute the law of the State of Maryland, and the party not requesting arbitration shall choose the forum where arbitration will occur."

On February 26, 1981, the district court granted Niro's motion for a stay and ordered the controversy be submitted to arbitration, the forum thereof to be chosen by Foley in accordance with the contractual agreement of the parties. Foley selected Kansas City, Missouri, as the arbitration hearing site.

Foley and Niro each selected an arbitrator and the two men, so designated, agreed upon who should serve as the neutral third arbitrator. All three arbitrators were knowledgeable in the area of mechanical construction involved in the dispute. On August 31 and September 1, 1981, the arbitrators held their arbitration

hearing wherein Foley and Niro presented their evidence. The arbitrators met again on September 22, 1981, to consider the evidence and unanimously agreed Foley should be awarded $247,980 plus predecision interest of $44,233 and post-decision interest on the total arbitration award from September 1, 1981, at the rate of 1 ½% per month until the award was satisfied. The award was formalized and entered on October 16, 1981, at which time Mr. Gardner, the arbitrator chosen by Niro, declined to join therein.

On November 6, 1981, Foley sought confirmation of the arbitration award in the original Johnson County District Court action herein. Niro sought vacation of the award. On February 23, 1982, the district court refused to vacate the arbitration award and confirmed the same. Niro appeals from said judgment.

Before proceeding to the issues one preliminary matter warrants attention. The arbitration article (article XII) in the contract herein specifies "the arbitrators shall apply to each dispute the law of the State of Maryland." Further, subsection C of article XIII of the contract provides: "This Subcontract shall be interpreted and governed by the laws of the State of Maryland." The arbitration clause further provides: "The rules and regulations of the American Arbitration Association shall govern . . . ." A literal reading of these three cited contractual provisions could well be interpreted to mean the law of Maryland is to be applied by the arbitrators in determining the merits of the controversy, and the arbitration procedures themselves are to be governed by the AAA rules. However, throughout this proceeding the parties have interpreted the "law of the State of Maryland" provision in the arbitration clause to encompass the entire arbitration proceeding, including confirmation and vacation of the arbitration award, with the AAA rules supplemental thereto. Inasmuch as this is the contract construction agreed upon by the parties, this court will proceed on that basis in determining the issues in this case.

Both Maryland and Kansas have adopted the Uniform Arbitration Act. Md. Cts. & Jud. Proc. Code Ann. § 3-201 *et seq.* (1980), K.S.A. 5-401 *et seq.* The Maryland and Kansas statutory arbitration provisions applicable here are predominately the same, though variations in the format of the Act as published by the two states complicate cross-citations. We have concluded it would be

of value to this opinion to cite the relevant Kansas sections of the Act with cross-citations to the comparable portions of the Maryland law.

The primary statute with which we are involved is K.S.A. 5-412 (Md. Cts. & Jud. Proc. Code Ann. § 3-224 [1980]), which provides:

"(a) Upon application of a party, the court shall vacate an award where:

"(1) The award was procured by corruption, fraud or other undue means;

"(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

"(3) The arbitrators exceeded their powers;

"(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of K.S.A. 5-405 [§ 3-213], as to prejudice substantially the rights of a party; or

"(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under K.S.A. 5-402 [§ 3-208] and the party did not participate in the arbitration hearing without raising the objection;

"But the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award."

We turn now to the issues.

For its first issue Niro contends the trial court erred in not vacating the arbitration award on the basis there was evident partiality and misconduct on the part of arbitrator Chamblin.

Graham Chamblin was the neutral arbitrator agreed upon by the two arbitrators appointed by the parties. At the beginning of the arbitration hearing Mr. Chamblin was asked if he knew either of the parties and he replied he did not. After the award was entered Niro discovered Chamblin had previously had some business dealings with Foley and bases this issue on that fact.

As previously noted one of the grounds specified in K.S.A. 5-412(a)(2) (Md. Cts. & Jud. Proc. Code Ann. § 3-224[b][2] [1980]), for vacation of an arbitration award is:

"(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party."·

The trial court held:

"The record shows that Mr. Chamblin 'performed a little $200 or $300 job' for Foley in 1976, and that he was on Foley's mailing list for bidding purposes (Chamblin's December 8, 1981 deposition, pp. 5, 6, 11). This minimal contact

and the performance of this insignificant amount of work over five years ago do not constitute sufficient grounds to vacate this arbitration award, especially since the suggestions of Niro do not establish any partiality, corruption or misconduct, let alone such conduct which would overturn the award."

As early as *Anderson v. Burchett,* 48 Kan. 153, 29 Pac. 315 (1892), the Court recognized some contact between an arbitrator and a party might be unavoidable and was not, by itself, sufficient to set aside an arbitration award. In *Anderson* one of the arbitrators, a Mr. Kennedy, was indebted to Mr. Burchett for $50. The Court found this indebtedness was not sufficient to set aside the award, stating:

"Another objection is, that one of the arbitrators was not disinterested and impartial, but was indebted to one of the contesting parties, and had counseled with him respecting the subject-matter of the controversy. Kennedy was indebted to Burchett to the extent of $50; but mere indebtedness of an arbitrator to one of the parties does not disqualify him. [*Wallis v. Carpenter & Another,* 95 Mass. (13 Allen) 19 (1866).] The indebtedness was small, and it is not shown that it was insecure, or that its payment depended to any extent on the result of this controversy. The interest of Kennedy, if it can be called one, was so remote and contingent that it could not, we think, have influenced him in his action, and nothing was shown in his conduct to indicate partiality or corruption." 48 Kan. at 155.

Both parties have cited cases in their briefs where neutral arbitrators have been held or not held evidently partial. If there is any rule which emerges from these cases it is probably best summarized by a New York Supreme Court, Appellate Division, in *Cross Properties, Inc. v. Gimbel Brothers, Inc.,* 15 App. Div. 2d 913, 225 N.Y.S.2d 1014, *aff'd* 12 N.Y.2d 806, 236 N.Y.S.2d 61, 187 N.E.2d 129 (1962).

"The type of relationship which would appear to disqualify is one from which it may not be unreasonable to infer an absence of impartiality, the presence of bias or the existence of some interest on the part of the arbitrator in the welfare of one of the parties." 15 App. Div. 2d at 914.

The Vermont Supreme Court, in *R. E. Bean Constr. Co. v. Middlebury Assoc.,* 139 Vt. 200, 428 A.2d 306 (1980), relied upon *Cross Properties* when it commented:

"An award should be vacated where undisclosed relationships create an impression of possible bias. However, if that rule is not 'to emasculate the policy of the law in favor of the finality of arbitration,' not every relationship will require that an award be vacated. *San Luis Obispo Bay Properties, Inc. v. Pacific Gas & Electric Co.,* 28 Cal. App. 3d 556, 568, 104 Cal. Rptr. 733, 741 (1972). Only relationships from which one could reasonably infer bias, not those which are

'peripheral, superficial or insignificant,' will require vacating the award. *Cross Properties, Inc. v. Gimbel Brothers, Inc.,* 15 App. Div. 2d 913, 914, 225 N.Y.S.2d 1014, 1016 (per curiam), *aff'd mem.,* 12 N.Y.2d 806, 187 N.E.2d 129, 236 N.Y.S.2d 61 (1962)." 139 Vt. at 207.

See also *St. Paul Ins. Companies v. Lusis,* 6 Wash. App. 205, 492 P.2d 575 (1971), *rev. denied* 80 Wash. 2d 1009 (1972), 56 A.L.R.3d 687.

Further, the arbitration clause in the contract herein requires each arbitrator to have expertise in the field of the dispute. The record reflects the mechanical contracting community in the Kansas City area involves a relatively small number of individuals. Minimal contacts among members of the group, under such circumstances, are to be anticipated.

In *Perl v. General Fire & Cas. Co.,* 34 App. Div. 2d 748, 310 N.Y.S.2d 196 (1970), a New York appellate court recognized some familiarity and expertise on the part of arbitrators may be helpful in resolving disputes in technical areas where knowledge of such industry is important to making a determination when it stated:

"Practically ever since arbitration has come to be an approved method of determining controversies it has been recognized that familiarity with the field in which the dispute lies is a highly desirable qualification for an arbitrator. 'Knowledge of a business and the methods used therein may be of great value in reaching a just result because of the ability of an arbitrator to apply such knowledge to the facts' (*Matter of Newburger [Rose],* 228 App. Div. 526, 529 [240 N.Y.S. 436, *aff'd* 254 N.Y. 546, 173 N.E. 859 (1930)]). In no other way except by activity in the particular field can such knowledge be gained. So it has been recognized that occasional contacts even with one of the parties to the arbitration are neither grounds for disqualification nor dictate a necessity for disclosure (*Matter of Cross Props. [Gimbel Bros.],* 15 A D 2d 913, affd. 12 N Y 2d 806)." 34 App. Div. 2d at 748.

See also *St. Paul Ins. Companies v. Lusis,* 6 Wash. App. at 210.

We conclude this issue is without merit.

For its second issue Niro contends the trial court erred in not vacating the arbitration award on the basis there was evident partiality and misconduct on the part of arbitrator Maynard Taber.

As to the "evident partiality" portion of the issue we note this ground for vacation is limited to a "neutral arbitrator" (K.S.A. 5-412[a][2], Md. Cts. & Jud. Proc. Code Ann. § 3-224[b][2] [1980]). Mr. Taber was appointed by Mr. Foley and was not a neutral arbitrator.

Was there misconduct by Mr. Taber? In its brief, defendant summarized its evidence of misconduct by Mr. Taber as follows:

"The customary procedure of the neutral arbitrator serving as chairman (as delineated in AAA Rules, Section 14 [Commercial Arbitration, Section 15 Construction Industry]) was not followed in this matter. Rather, Taber, the arbitrator appointed by plaintiff, aggressively assumed the duties of chairman and, as pointed out, Taber was assisted by plaintiff in arranging meetings for the arbitrators and preparing notices."

Initially, it should be noted, Niro has cited this Court to the *Commercial* Rules of the American Arbitration Association, when the appropriate version for this case was the *Construction Industry* Rules. Section 15 of the Construction Industry Rules of the AAA, which corresponds to Section 14 of. the Commercial Rules, only requires a neutral arbitrator to serve as chairman when such arbitrator has been appointed by the AAA. Section 15 provides:

"If the parties have appointed their party-appointed arbitrators or if either or both of them have been appointed as provided in Section 14, and have authorized such arbitrator to appoint an arbitrator within a specified time and no appointment is made within such time or any agreed extension thereof, the AAA shall appoint an arbitrator who shall act as Chairperson.

"If no period of time is specified for appointment of the third arbitrator and the party-appointed arbitrators do not make the appointment within seven days from the date of the appointment of the last party-appointed arbitrator, the AAA shall appoint the arbitrator who shall act as Chairperson.

"If the parties have agreed that their party-appointed arbitrators shall appoint the arbitrator from the Panel, the AAA shall furnish to the party-appointed arbitrators, in the manner prescribed in Section 13, a list selected from the Panel, and the appointment of the arbitrator shall be made as prescribed in such Section."

The neutral arbitrator was not appointed by the AAA, consequently Section 15 of the Construction Industry Rules of the AAA has no effect.

We conclude this issue is also without merit.

The third issue is whether the trial court erred in not vacating the arbitration award on the ground the award was procured by corruption, fraud or other undue means.

K.S.A. 5-412(*a*)(1) (Md. Cts. & Jud. Proc. Code Ann. § 3-224 [b][1] [1980]) provides:

"[T]he court shall vacate an award where: .
"(1) The award was procured by corruption, fraud or other undue means."

To establish fraud in Maryland or Kansas there must be more than a mere preponderance of evidence, there must be clear and satisfactory evidence, *First Nat'l Bank v. U.S.F. & G. Co.*, 275 Md. 400, 411, 340 A.2d 275 (1975), or clear and convincing evidence. *Nordstrom v. Miller*, 227 Kan. 59, Syl. ¶ 7, 605 P.2d 545 (1980); *Weigand v. Union Nat'l Bank of Wichita*, 227 Kan. 747, Syl. ¶¶ 2, 3, 610 P.2d 572 (1980). In neither state is fraud presumed.

The trial court adequately stated Niro's contentions relative to this issue and the court's rationale in refusing to vacate the award thereon as follows:

"Niro maintained that Foley made a so-called *ex parte* communication to the arbitrators on September 21, 1981 and as a result, Niro contends the award was procured by corruption, fraud or other undue means of Foley. The so-called *ex parte* communication by Foley was in the form of a letter brief by counsel for Foley which cited case law in partial response to counsel for Niro's statement made during the arbitration hearing that he would submit a brief to the arbitrators. (Tr. 407). These contentions do not support a vacation of the arbitration award under the laws of either Maryland or Kansas especially since the arbitrators did not review, confer with respect to, or even discuss the September 21, 1981 documents submitted by Foley.

"The record discloses that counsel for Foley directed his firm's messenger to take a copy of the September 21, 1981 letter brief to Mr. Martin's office at the same time the other copies of the letter brief were delivered to the arbitrators. The record also discloses that Mr. Gardner gave Mr. Martin, counsel for Niro, a copy of the letter brief on September 22, 1981. Under these circumstances, the Court would not consider this to be an *ex parte* communication.

"In addition, Niro has not advanced any proof that the letter brief in any way affected or played a part in the decision rendered by the arbitrators. Mr. Chamblin testified that some documents were delivered to his office the morning of the arbitrators' meeting but 'the case is closed . . . I paid no attention to them. The case was closed. We were going to meet that evening and make a decision and that was it.' (Chamblin's December 8, 1981 deposition, p. 8). Mr. Taber testified that 'I didn't have time . . . They came during the day, and I was busy, and we met at 4:00 o'clock in the afternoon.' (Taber's December 8, 1981 deposition, p. 7). Whether Mr. Gardner read the letter before the meeting is of no consequence because he did not participate in the award.

"The arguments of Niro also ignore that the letter brief was delivered to the arbitrators and counsel for Niro on September 21 but the award was not made until October 16. Between September 21 and October 16 Niro did not file a brief, as it had advised the arbitrators it would, and Niro made no response or objection to the letter brief of Foley. Niro did not object to the letter brief during this period of almost four weeks and Niro cannot now be heard to complain."

We conclude this issue is likewise without merit.

The fourth issue is whether the trial court erred in not vacating

the arbitration award on the basis the arbitrators exceeded their powers.

K.S.A. 5-412(*a*)(3) (Md. Cts. & Jud. Proc. Code Ann. § 3-224[b][3] [1980]) provides:

"[T]he court shall vacate an award where:

. . . .

"(3) The arbitrators exceeded their powers."

Specifically, Niro contends the arbitrators exceeded their powers: (1) by entering an excessive award; (2) by entering an award which was not supported by the evidence; (3) by granting any predecision interest; and (4) by granting post-decision interest at a rate greater than 10% per annum.

The controversy herein involved amounts allegedly due which were in excess of the $843,626 specified in the contract. Foley claimed $416,551 in additional costs and expenses were incurred as a result of changes made by Niro and Niro's interference in Foley's performance of the subcontract. The arbitrators heard the conflicting evidence and concluded $247,980 of Foley's claim was properly chargeable to Niro.

In denying Niro's claim for vacation of the arbitration award based on the ground the arbitrators had exceeded their authority, the trial court stated:

"Niro contends that the arbitrators exceeded their authority. Maryland statutes on arbitration expressly provide that 'the Court shall not vacate the award or refuse to confirm the award on the ground that a Court of law or equity could not or would not grant the same relief.' Annotated Code of Maryland, Section 3-224(c) [K.S.A. 5-412(*a*)(5)]. In addition the Court of Special Appeals of Maryland has held that arbitration awards may be vacated only if they were tainted by improbity or based on a completely irrational interpretation of the contract. *O-S Corporation, et al. v. Samuel A. Kroll, Inc.*, 29 Md. App. 406, 348 A.2d 870 (1975). No such conditions exist in this case and Niro has never asserted or even attempted to meet such a condition to set aside the arbitration award.

"Under the law of Maryland a Court is obligated, in reviewing an arbitration decision, even to 'judicially accept an arbitrary interpretation of a contract.' *O-S Corporation* [29 Md. App. at 410]. This Court does not find any arbitrary or other interpretation of the contract between the parties which would warrant setting aside the award.

"The Foley-Niro arbitration award was based upon sufficient legal evidence. The Court of Special Appeals in Maryland as recently as January 8, 1982 in *Maryland Port Authority v. C.F. Langenfelder* [50 Md. App. 525, 438 A.2d 1374 (1982)] has held that a contractor in a situation similar to *Langenfelder* was entitled to both prejudgment and postjudgment interest on its claim. Under both the law of the States of Kansas and Maryland, the arbitration award should and

must be confirmed. Niro has offered no credible reason to vacate the award, none exists and thus, Niro's Motion to Vacate the Arbitration Award is overruled."

In *Evans Electrical Constr. Co. v. University of Kansas Med. Center,* 230 Kan. 298, Syl. ¶ 5, 634 P.2d 1079 (1981), we said:

"Where parties have agreed to be bound by a submission to arbitration, errors of law and fact, or an erroneous decision of matters submitted to the judgment of the arbitrators, are insufficient to invalidate an award fairly and honestly made. Nothing in an award relative to the merits of the controversy as submitted, even though incorrectly decided, is ground for setting aside the award in the absence of fraud, misconduct, or other valid objections."

In *O-S Corp. v. Samuel A. Kroll, Inc.,* 29 Md. App. 406, 348 A.2d 870 (1975), *cert. denied* 277 Md. 740 (1976), the Maryland Court of Special Appeals commented:

"[W]hen reviewing the fruits of an arbitrator's award, a judge may withhold only such as were tainted by improbity *or* based on a completely irrational interpretation of the contract." 29 Md. App. at 408-09.

Further:

" '[A]n award of an arbitrator is not subject to judicial revision unless it is "completely irrational".' *Swift Industries, Inc. v. Botany Industries, Inc.,* 466 F.2d 1125, 1131 [(3rd. Cir. 1972)]." 29 Md. App. at 409.

Succinctly:

"We must judicially accept an arbitrary interpretation of a contract by an arbitrator. We shall vacate a completely irrational one." 29 Md. App. at 410.

By couching its direct attack upon the award in statutory terms of the arbitrators' exceeding their powers, Niro, in points (1) and (2), attempts to have the trial court substitute its judgment for that of the arbitrators on the merits of the dispute.

In *Dominion Marble Co. v. Morrow,* 130 Md. 255, 100 A. 292 (1917), Maryland's highest court commented:

"In such cases it is conceded that the Court will not look into the merits of the matter and review the findings of law or fact made by the arbitrators nor substitute its opinion or judgment for theirs, but will require the parties to submit to the judgment of the tribunal of their own selection and abide by the award." 130 Md. at 260.

See also *Chillum v. Button & Goode,* 242 Md. 509, 516, 219 A.2d 801 (1966).

The reason an arbitration award will not be considered de novo by a court is if it were otherwise, arbitration would only then be a dress rehearsal for litigation rather than an alternative

to litigation. As noted recently by the Vermont Supreme Court in *R. E. Bean Constr. Co. v. Middlebury Assoc.*, 139 Vt. 200:

"The courts must respect an arbitrator's determinations; otherwise, those determinations will merely add another expensive and time consuming layer to the already complex litigation process." 139 Vt. at 204-05.

We turn to points (3) and (4) relative to predecision interest and post-decision interest, respectively.

In *Md. Port Adm. v. C. J. Langenfelder & S.*, 50 Md. App. 525, 438 A.2d 1374 (1982), cited by the trial court, the Maryland Court of Special Appeals held:

"Predecision interest is neither required nor forbidden as a matter of law.

"The underlying object, as we have seen, is to make a contractor 'whole,' to safeguard him against increased costs engendered by the modification *that he is forced to complete*. In that regard, the comment of the Senate Committees with respect to the Contract Disputes Act [41 U.S.C. § 601 *et seq.*] is apposite—that there can be no equitable adjustment until the contractor recovers the entire cost of doing the extra work, and that the cost of money to finance that additional work is a legitimate cost of the work itself. That is true whether the cost of the money is in the form of interest paid on borrowed funds or the loss of income on the contractor's own capital invested in the additional work. We therefore think that compensation for such a cost—the cost of money—is an appropriate element in calculating an 'equitable adjustment,' and that the allowance of that cost may be expressed in the form of predecision interest." 50 Md. App. at 543.

It is true the *Langenfelder* decision limited post-decision interest to 6% per annum. However *Langenfelder* involved the power of a statutorily created Board of Contract Appeals—an administrative agency created to resolve contract disputes between the Maryland Department of Transportation and its contractors. *Langenfelder* does not involve contractual arbitration proceedings under the Uniform Arbitration Act.

There is no showing the interest awarded herein was inconsistent with commercial interest rates applicable at the time of the award.

We conclude this issue in its entirety is also without merit.

The fifth issue is whether the trial court lacked jurisdiction and venue to confirm the arbitration award.

In rejecting the challenge to its jurisdiction and venue, the trial court stated:

"After this lawsuit was filed, defendant, Niro Atomizer, Inc. (herein "Niro"), filed a motion to stay this lawsuit and to require the issues raised in the lawsuit to be resolved by arbitration in accordance with the contract between the parties. The contract specifically provided that if one party demanded arbitration, the

other party had the right to select the site of the arbitration. In its motion, Niro sought to have this arbitration conducted in Baltimore, Maryland. After arbitration was ordered by this Court with the site to be selected by Foley, and after the arbitration was concluded and the award made, Niro then complained that this Court lacked venue and jurisdiction because Foley selected Kansas City, Missouri as the arbitration site and because the arbitration was held in Kansas City, Missouri.

"The argument is without merit. Venue is proper and this Court has had jurisdiction over this entire matter since the case was filed. This Court determined that the Motion of Niro to arbitrate had merit and should be granted but also that such Motion constituted, as it was, a demand by Niro under the contract to arbitrate. Based on this finding, the Court ordered that the issues be arbitrated, as requested by Niro, and that the arbitration be held at a place to be selected by Foley. Foley selected Kansas City, Missouri as the site of the arbitration and both Foley and Niro complied with the Court's Order without objection. Niro's belated objection on the situs of the arbitration has no merit."

The contract in question was performed in Johnson County, Kansas. Foley commenced this action to foreclose a mechanic's lien. Proper service was obtained on Niro. It was Niro who elected to seek determination of the dispute relative to the additional charges which were the basis of the mechanic's lien through the contractual arbitration rather than through the judicial mechanic's lien proceeding. We have no hesitancy under the circumstances herein to conclude the Johnson County District Court had jurisdiction and venue to confirm the arbitration award.

For its final issue Niro contends the trial court improperly denied Niro a trial on all issues herein.

In *Evans Electrical Constr. Co. v. University of Kansas Med. Center,* 230 Kan. 298, Syl. ¶ 4, we said:

"Where an arbitration award, made under the Uniform Arbitration Act (K.S.A. 5-401 *et seq.*) and filed for judgment, is attacked by one of the parties, it is not the function of the court to hear the case de novo and consider the evidence presented to the arbitrators."

The trial court held as a matter of law the facts set forth in Niro's Motion to Vacate the Arbitration Award were inadequate to sustain the motion. We have carefully considered the matters raised in this issue and conclude no reversible error has been shown.

The judgment is affirmed.